# Arnold & Porter

**Diana Sterk**
+1 212.836.8429  Direct
Diana.Sterk@arnoldporter.com

May 8, 2026

Hon. Edgardo Ramos, U.S. District Judge
U.S. District Court, Southern District of New York
*By ECF to the Court and all counsel of record*

Re:  *The City of New York v. Yazam, Inc. d/b/a Empower and Joshua Sear*, No. 26-cv-3632

Dear Judge Ramos,

Defendants Yazam, Inc. d/b/a Empower and Joshua Sear respectfully request a pre-motion conference before filing their motion to dismiss under Rules 12(b)(2), (5), and (6).

Empower is a software company that develops and sells software and related support services to drivers who wish to work for themselves ("Subscribers"), instead of for rideshare companies like Uber or Lyft. Compl. ¶ 14. For New York City, Empower sells only to TLC-licensed drivers using TLC-licensed vehicles. With Empower's software, Subscribers set their own rates and get 100% of the fares they charge their riders. *See* Compl. ¶ 14. All payments from riders to Subscribers are processed by Stripe, a third-party payment platform. Empower does not make any money from riders who use its software to book rides from Subscribers; its revenue comes entirely from subscription fees paid by Subscribers. Empower is different from Uber and Lyft, which set fares, charge riders for rides, and contract with and pay drivers to provide rides on their behalf. With Empower, individuals and small businesses that provide transportation services to the public are the customers; with Uber and Lyft, riders are the customers.

The City seeks sweeping relief to declare Empower's existence in New York unlawful unless it obtains a license that it is not required to obtain, going so far as to request that Empower be enjoined from even communicating in the state with anyone about the services it provides anywhere (*see* Compl. p. 13). Yet the City failed to plead facts showing that Empower violated the New York licensing provisions it invokes, failed to plead personal jurisdiction over Mr. Sear (who resides in Virginia), and failed to properly serve Empower or Mr. Sear.

## I.     The Complaint Fails to State a Claim Against Empower

The Complaint fails to state a claim against Empower because it does not show that Empower violated any licensing requirement. The City pleads regulatory labels, not facts alleging that Empower fits the licensing categories the City invokes. It calls Empower a "dispatcher," "base," "communications system," and "high-volume for-hire service" ("HVFHS"), but the facts alleged describe a software company that enables its customers to work for themselves instead of for a "dispatcher," "base," "communications system," "HVFHS," or anything or anyone else. Subscribers pay Empower a subscription fee, use independently owned vehicles, set their own rates, connect with riders through a separate rider app, and keep 100% of any fares they earn. *See* Compl. ¶¶ 8–9, 14, 17. The Complaint does not allege that Empower owns vehicles, employs

# Arnold&Porter

drivers, charges riders, pays drivers, maintains a physical TLC base, affiliates vehicles with one, or directs drivers to provide transportation to anyone because, unlike companies required to obtain a license from TLC, Empower does not do any of those things. The Complaint sets out four counts that rest on its incorrect characterization of Empower as a business subject to licensure requirements. Each count fails.

Count One invokes Admin. Code § 19-511(a), which concerns "two-way radio or other communications systems used for dispatching or conveying information to drivers of licensed vehicles," but the Complaint identifies no current standalone communications-system license that Empower was required to obtain. Moreover, the City avoids pleading communications with drivers of licensed vehicles, instead alleging that it is "unable to confirm" whether drivers or vehicles using Empower are licensed. Compl. ¶ 9. That ambiguity is tactical but fatal. The Complaint's refusal to admit that every driver using Empower in New York City is licensed by the TLC and uses a TLC-licensed vehicle may serve the City's preliminary-injunction rhetoric—because acknowledging this would undercut the City's public-safety and insurance-based harm theory— but having invoked regulations that turn on licensure, the City must plead that element.

Count Two alleges that Empower needed a "base license" under § 19-511, but does not identify which base category Empower supposedly fits (beyond HVFHS, addressed below), does not plead any physical base location or affiliated-vehicle structure, and conflicts with the legal framework that treats a HVFHS license as a type of base license.

Count Three alleges that Empower is "dispatching" as a HVFHS under § 19-548 without a license, but "dispatching" is a defined term that the Complaint recites as a legal conclusion, not a fact. The Complaint does not plead any facts showing that Empower directs drivers to provide transportation to anyone or that any such direction comes from a base station, or that Empower facilitates the dispatching of any trips. The Complaint asserts that Mr. Sear testified that Empower "dispatched" rides, Compl. ¶ 13, but the testimony the Complaint references says no such thing. It says that "Empower provides drivers with software and support services," that drivers "set their own rates," that drivers get "100%" of fares, and that "drivers using [Empower's] software and services provided" rides. *Id.* ¶ 14. The word "dispatch" appears only in the City's characterization, not in Mr. Sear's testimony. *Id*.

Count Four is derivative of the first three: § 19-528 creates no freestanding "for-hire transportation service" license, but applies only if another specific license is required. Because the Complaint does not plead facts showing that Empower violated any applicable licensing provision, all claims against Empower must be dismissed.

## II.    The Complaint Fails to Establish Personal Jurisdiction or a Claim Against Mr. Sear

The City has also not pled facts to establish personal jurisdiction or personal statutory liability as to Mr. Sear. It offers only the impermissibly threadbare, conclusory assertion that, "upon information and belief," he "directed, controlled, had authority to control, or participated in Empower's business operations" in New York City. Compl. ¶ 4; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, a general,

Page 2

# Arnold&Porter

conclusory allegation that an officer controls a corporation is insufficient to establish personal jurisdiction, *see Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 333 (E.D.N.Y. 2021), and is not a "good faith, legally sufficient allegation[] of jurisdiction" under an agency theory, *City of New York v. Magellan Tech., Inc.*, 835 F. Supp. 3d 312, 331 (S.D.N.Y. 2024). The Complaint identifies no individual conduct by him that gives rise to personal jurisdiction or liability, seeks no declaratory relief against him, and does not plead any conduct by him that would entitle the City to an injunction against him personally. *See O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003) ("There is no 'injunctive' cause of action . . . Instead, [plaintiffs] must allege some wrongful conduct on the part of [the defendant] for which their requested injunction is an appropriate remedy") (quotation omitted). Indeed, the Complaint also fails to plead any of the traditional elements required for injunctive relief against Mr. Sear or Empower. *See Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995).

### III.   The City Failed to Serve Defendants and Thus the Court Lacks Personal Jurisdiction

Finally, the City failed to serve Defendants in accordance with the order to show cause ("OSC") that the City obtained before removal—a fatal jurisdictional defect. It is well-established that, "[t]he method of service provided for in an order to show cause is jurisdictional in nature and must be strictly complied with." *Matter of Hennessey v. DiCarlo*, 21 A.D.3d 505, 505 (2d Dep't 2005); *Bell v. State Univ. of N.Y. at Stony Brook*, 185 A.D.2d 925, 925 (2d Dep't 1992) (order "must be literally followed"). That rule applies even where the method used might seem close enough or "better." *Matter of Bruno v. Ackerson*, 51 A.D.2d 1051, 1051 (2d Dep't 1976), *aff'd*, 39 N.Y.2d 718 (1976) (hand delivery invalid where OSC required affixing papers to door); *Matter of Robins v. Rosa*, 225 A.D.3d 1110, 1112 (3d Dep't 2024) (service at correct but different address than the one in OSC invalid despite actual notice, receipt, and lack of prejudice); *Colonial Funding Network, Inc. v. Finley*, 221 A.D.3d 498, 499 (1st Dep't 2023) (service by priority mail invalid where OSC specified overnight express mail).

Here, the OSC prescribed a specific service method: mailing the papers to Defendants by overnight express mail and regular first-class mail at "1307 Dolley Madison Boulevard, 4th Floor, McLean, Virginia 22101," plus emailing them to various addresses. OSC at 2. The City's affirmation of service and other delivery records show that it did not comply. It sent the papers via UPS and priority mail, omitted "4th Floor" on both envelopes, and gave UPS the wrong zip code. *See* Jones Affirm. at 1; ECF 4, Defs.' Prelim. Objection, at 6 n.1. While no showing of prejudice is required (*Matter of Robins*, 225 A.D.3d at 1112), the UPS package was not delivered the next day to Empower's mail drop for postal deliveries, but instead languished in a building common area. New York law requires exact compliance with the service set forth in an OSC. The City did not do so here; thus, service is invalid and the Court lacks personal jurisdiction.

Sincerely,

/s/ Diana Sterk

Diana Sterk, Counsel for Defendants

Page 3