UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE CITY OF NEW YORK,

               Plaintiff,

   -against-

YAZAM INC. d/b/a EMPOWER and JOSHUA
SEAR as CHIEF EXECUTIVE OFFICER OF
YAZAM INC. d/b/a EMPOWER,

               Defendants.

26-cv-3632

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

STEVEN BANKS
Corporation Counsel of the
City of New York
*Attorney for Plaintiff*
100 Church Street
New York, New York 10007

MICHELLE GOLDBERG-CAHN
JORDAN SCHNEIDER
SPENCER JACKSON-KAYE (Admission to SDNY pending)
     Of Counsel.

May 29, 2026

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT

        THERE IS NO REQUISITE $75,000 AMOUNT IN
        CONTROVERSY AND THUS THERE IS NO
        DIVERSITY JURISDICTION OVER THIS
        ACTION ......................................................................................................... 3

CONCLUSION................................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**                                                                                                         **Pages**

Dimich v. Med-Pro, Inc.,
  304 F. Supp. 2d 517 (2d Cir. 2004) ............................................................................3, 6

District of Columbia v. Yazam Inc. d/b/a Empower,
  2024-CAB-004751 (D.C. Super. Ct.) (filed July 29, 2024)..............................................6

Gilman v. BHC Secs., Inc.,
  104 F.3d 1418 (2d Cir. 1997).............................................................................................3

Hunt v. Wash. State Apple Advertising Comm'n,
  432 U.S. 333 (1977)...........................................................................................................3

Katz v. Warner-Lambert Co.,
  9 F. Supp. 2d 363 (S.D.N.Y. 1998) ..................................................................................3

Morrison v. Allstate Indemnity Comp.,
  228 F.3d 1255 (11th Cir. 2000) ........................................................................................3

Rojas v. Triborough Bridge & Tunnel Auth.,
  18-cv-1433 (PKC), 2022 U.S. Dist. LEXIS 43103 (S.D.N.Y. Mar. 10, 2022) ........................5

SomIyo v. J. Lu-Rob Enterprises, Inc.,
  932 F.2d 1043 (2d Cir. 1991).............................................................................................3

United States v. Bajakajian,
  524 U.S. 321 (1998)...........................................................................................................5

**Statutes**

35 RCNY § 59B-04(e)(1) ..................................................................................................5

28 U.S.C. § 1332...............................................................................................................3

28 U.S.C. § 1441...............................................................................................................3

28 U.S.C. § 1446...........................................................................................................1, 3

28 U.S.C. § 1447...............................................................................................................1

N.Y.C. Admin. Code § 19-511(a)......................................................................................5

N.Y.C. Admin. Code § 19-548(d)......................................................................................4

NYS Tax Law, Art. 29-C, § 1299......................................................................................6

**Statutes** **Pages**

NYS Vehicle and Traffic Law, Art. 44-C, § 1701 ..........................................................................6

NYS Vehicle and Traffic Law, Art. 44-C, § 1704-a .......................................................................6

Plaintiff submits this memorandum of law in support of its motion to remand this action back to New York State Supreme Court, County of New York, Index No. 651889-2026, pursuant to 28 U.S.C. §§ 1446 and 1447.

## PRELIMINARY STATEMENT

Defendant Yazam Inc. d/b/a Empower ("Empower"), a company now purporting to connect passengers with drivers by dispatching more than 100,000 rides per week in New York City ("City"), has been illegally operating an unlicensed for-hire vehicle ("FHV") transportation service in New York City since 2022. Such services are regulated by the New York City Taxi & Limousine Commission ("TLC"), whose mandate is to ensure that public transportation in New York City, including FHV service, is conducted safely and in a manner that protects drivers and the riding public at large.

Empower has defied all attempts by TLC to have it come into compliance with local law and regulation. TLC attempted to regulate Empower's unlicensed activity in 2022 and 2023 via undercover enforcement operations, with thirty-two violations issued against Empower for unlicensed activity. Empower ignored each of these violations, resulting in default judgments against it. At no time has Empower sought to respond to, or dispute, any of these violations. TLC also sent a cease-and-desist letter to Empower in May 2022; Empower failed to respond. In February 2026, TLC again conducted undercover enforcement operations resulting in more violations being issued against Empower for unlicensed activity. TLC also took steps to publicly notify riders and drivers that Empower is not a licensed FHV transportation service and that its unlicensed status puts them at risk.

Thereafter, on March 12, 2026, Defendant Joshua Sear ("Sear") appeared before the New York City Council and, unprompted, announced that Empower was conducting more than 100,000 illegal rides per week in the City "and growing." Sear's public testimony confirmed not

only that Empower is conducting unlicensed FHV transportation services in New York City, but that it is actually providing rides at such a volume that now qualifies Empower as a high-volume for-hire service ("HVFHV"). At this scale, TLC cannot effectively take the myriad of enforcement actions that it is entitled to under the law to protect the public, and, accordingly, the City brought the instant action seeking a cessation of Empower's illegal operations.

Plaintiff initially brought this action in New York State Supreme Court, County of New York, and brought an Order to Show Cause seeking expedited preliminary injunctive relief against Defendants Empower and Joshua Sear, as Chief Executive Officer of Empower, from continuing to illegally operate an unlicensed FHV transportation service. Plaintiff's Verified Complaint ("Complaint") seeks two discrete requests for relief: (1) a declaratory judgment that Defendants are illegally operating an unlicensed FHV transportation service; and (2) permanent injunctive relief enjoining Empower from operating in New York City. Despite there being no amount in controversy, Defendants removed this case to this Court on the grounds that diversity jurisdiction exists. In a transparent end-run around this foundational failure, Defendants attempt to conjure up the requisite amount in controversy by referring to mere recitations of relevant statutory provisions made in Plaintiff's various existing papers.

As this action does not meet the requisite $75,000 amount in controversy, this Court lacks subject matter jurisdiction. Accordingly, Plaintiff respectfully requests that the Court grant its motion to remand this case back to New York State Supreme Court, County of New York, Index No. 651889-2026.

2

**ARGUMENT**

**THERE IS NO REQUISITE $75,000 AMOUNT IN CONTROVERSY AND THUS THERE IS NO DIVERSITY JURISDICTION OVER THIS ACTION**

Defendants have removed this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, asserting that this Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties and the amount in controversy exceeds the requisite threshold of $75,000. It is Defendants' burden to prove that the instant action is properly in federal court; that is, it is Defendants' burden to prove, by a preponderance of the evidence, that Plaintiff's claims against them exceed $75,000. Gilman v. BHC Secs., Inc., 104 F.3d 1418, 1421 (2d Cir. 1997). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." SomIyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991).

Where, as is in this case, injunctive relief is sought, "the amount in controversy is measured by 'the value of the object of the litigation.'" Katz v. Warner-Lambert Co., 9 F. Supp. 2d 363, 364 (S.D.N.Y. 1998) (quoting Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977)). The "plaintiff's viewpoint" approach is the prevailing method for calculating value in the Second Circuit, where a court "calculates the value to the plaintiff, not the cost to the defendant." Dimich v. Med-Pro, Inc., 304 F. Supp. 2d 517, 519 (2d Cir. 2004) (citing Katz, 9 F. Supp. 2d at 364). When calculating the benefit of an injunction to the plaintiff, that benefit "must not be 'too speculative and immeasurable.'" Id. (quoting Morrison v. Allstate Indemnity Comp., 228 F.3d 1255, 1271 (11th Cir. 2000)).

3

Here, Defendants offer nothing more than speculative musings as to the value of Plaintiff's claims, which nevertheless improperly focus on costs to the Defendants rather than a benefit to the City. Defendants rely primarily on a single paragraph of the Verified Complaint ("Complaint"), in which Plaintiff alleges that Empower's operations, as stated by its CEO, meets the statutory definition of a "high-volume for-hire service." See Defs.' Notice of Removal, ECF No. 1 ("Notice of Removal"), ¶ 19. With this allegation, Plaintiff merely recited a statutory provision, Admin. Code § 19-548(d), in noting that such a service operating without a license can be subject to a $10,000 per day violation. Complaint, ¶ 15. The Complaint does not, as Defendants have claimed, allege that Defendants "are liable" for any fines related to unlicensed operation of a high-volume for-hire service. Notice of Removal, ¶ 19. Indeed, Plaintiff could not make such an allegation because TLC has not issued any violations against Empower for a violation of Admin. Code § 19-548(d). Whether TLC issues any such violations in the future is entirely speculative and not indicative of the value of this litigation to Plaintiff. In fact, Defendants concede that it is entirely speculative in their own Notice of Removal. Id. at ¶ 20 ("therefore, if Defendants are found to be violation of the Admin. Code in the Complaint,…their fines as alleged by the City would well exceed $75,000.") (emphasis added).

Curiously, Defendants do not make any reference to the actual and measurable violations, and the fines associated with those violations, that TLC has already issued against Empower, which are alleged in Plaintiff's Complaint. See Complaint ¶¶ 11-12. Perhaps this is because the total of the face value of the fines amounts to only $10,100—well below the requisite amount in controversy threshold. See Notice of Removal, Exhibit "B," ECF No. 1-2, at p. 75-202; ECF No. 1-3, at p. 2-140. Even so, the City is not seeking to recoup those fines in the instant litigation, and is certainly not attempting to recoup any undetermined or nonexistent fines. Further,

4

any payment of fines is clearly a cost to Defendants rather than some benefit to the City. The

purpose of TLC's violations is to punish an offender of the City's Administrative Code and deter

future illegal conduct, not extract some benefit to the City from an act of wrongdoing. See Rojas

v. Triborough Bridge & Tunnel Auth., 18-cv-1433 (PKC), 2022 U.S. Dist. LEXIS 43103, at *18

(S.D.N.Y. Mar. 10, 2022) ("In evaluating the purpose of a fine, deterrence 'has traditionally been

viewed as a goal of punishment,' in contrast to payments that "serve the remedial purpose of

compensating the Government for a loss.") (quoting United States v. Bajakajian, 524 U.S. 321,

329 (1998)).

Next, Defendants misstate the relief sought in the Complaint by asserting that

Plaintiff seeks to force Empower to obtain the necessary licenses to operate in the City, thus

implicating the $380,000 high-volume for-hire service licensing fee. Notice of Removal, ¶ 23. The

City is not seeking "a declaration that Empower is required to apply for this license;" (id.) rather,

the City is seeking a declaration that Empower's operations in the City are illegal, absent

Empower's decision to seek either an FHV[1] or high-volume for-hire service license. See Compl.

at "Wherefore" Clause. Stated differently, the City seeks only a cessation of Empower's illegal

operations; whether Empower chooses to obtain the necessary licenses is entirely its choice.

Plaintiff's allegations regarding Empower's decision to flout the City's laws and operate without

a license goes not to recouping a single licensing fee, but to obtaining a cessation of Empower's

operations to protect the riding public.

And, that decision by Empower to obtain the licenses is entirely speculative given

its conduct in other jurisdictions. In Washington D.C., Empower was ordered by a District of

---

[1] Notably, an FHV base license fee is "not more than five hundred dollars a year," and TLC's regulations require a $5,000 bond to be provided to the agency, which is well below $75,000. See Admin. Code § 19-511(a); 35 RCNY § 59B-04(e)(1).

Columbia Superior Court judge to cease operations "until such a time as Defendant has registered as a Private Vehicle-For-Hire Company." See generally District of Columbia v. Yazam Inc. d/b/a Empower, 2024-CAB-004751 (D.C. Super. Ct.) (filed July 29, 2024). Empower opted to continue operating illegally in Washington D.C., and has yet to come into compliance with the District's regulations and obtain the necessary registration. Empower scores a victory in its years-long fight to offer rides in D.C., The Washington Post (April 23, 2026), https://www.washingtonpost.com/dc-md-va/2026/04/23/empower-free-rides-dc-judge-ruling/ ("The District says [Empower's] applications fell short of the requirements…"). Accordingly, it is entirely speculative that Defendants will seek to or actually obtain the necessary licenses and pay the requisite fees. In fact, Defendants explicitly affirm in their opposition letter that, from the City's viewpoint, it is speculative that Empower will obtain the high-volume for-hire service license. Defs.' Opp. Letter, ECF No. 10, at 2-3 ("The City goes on to speculate that Empower might not apply for a license…the City cannot defeat jurisdiction by speculating that Empower might surrender the operating rights…the AIC is measured by the consequences that may result from the litigation or the value of rights being adjudicated, not by the City's speculation…").

Finally, Defendants' suggestion that the taxes Empower may owe implicates the amount in controversy is problematic because those taxes are owed pursuant to state law, not local law. See NYS Vehicle and Traffic Law, Art. 44-C, §§ 1701, 1704-a; NYS Workers' Comp. Law § 11, NYS Executive Law Art. 6-F; NYS Tax Law, Art. 29-C, § 1299. Thus, the benefit of recouping any potential taxes lies with the state, not Plaintiff. As the proper inquiry is to assess the value of this litigation through Plaintiff's viewpoint, Defendants references to state taxes is irrelevant. Dimich, 304 F. Supp. 2d at 519.  Further, while City regulations require for-hire service licensees to pay those taxes, only the state can assess the amount owed for any past rides conducted

on the Empower platform. And, any future taxes are, of course, ongoing and dependent on future rides that are provided by Empower. Accordingly, those taxes are, as far as the City is concerned, immeasurable and thus have no bearing on the amount in controversy as to Plaintiff's case against Empower. See id.

Unlike Defendants, Plaintiff need not improperly resort to conjecture to ascertain the benefit to the City. See id. Viewing this action through the City's viewpoint, it is apparent that the purpose this case is not to obtain monetary damages, but rather, to prohibit Empower's operations from continuing and protect the riding public from an unlicensed and illegal FHV transportation service. Indeed, the City has already expressly laid out its purpose in bringing this lawsuit in its memorandum of law in support of its motion for a preliminary injunction. See Notice of Removal, Exhibit "B," ECF No. 1-2, at p. 2-25. The City seeks to ensure that for-hire rides are conducted by qualified drivers in vehicles that are safe to operate. Id. at p. 19. The City seeks to protect the public from a corporate entity that has disclaimed liability and pushed the physical and financial risk of accidents onto riders and drivers. Id. at 18-19. The City also seeks to ensure that drivers are paid their lawfully guaranteed pay. Id. at 19-20. As Empower has refused to even attempt to get licensed, the City now seeks the appropriate declaratory and injunctive relief to ensure that Empower ceases to operate. Accordingly, as the amount in controversy is below the requisite $75,000 threshold, this Court lacks subject matter jurisdiction.

**CONCLUSION**

For all the reasons stated herein, Plaintiff respectfully requests that this Court grant its motion to remand, and issue an order remanding this case back to New York State Supreme Court, County of New York, Index No. 651889-2026.

Dated:    New York, New York
          May 29, 2026

        STEVEN BANKS
        Corporation Counsel
         of the City of New York
        Attorney for Plaintiff
        100 Church Street
        New York, New York 10007
        (212) 356-2180

*Jordan Schneider*
        Jordan Schneider
        Spencer Jackson-Kaye
        Assistant Corporation Counsels

## **WORD COUNT CERTIFICATION**

Pursuant to Local Rule 7.1(c), I hereby certify as follows: (i) according to Microsoft Word, the portions of this memorandum that must be included in a word count contain 2,204 words; and (ii) this memorandum complies with the word count limit set forth in Local Rule 7.1(c) and Section 2(B)(i) of the Court's Individual Practices.

Dated:      New York, New York
          May 29, 2026

*Jordan Schneider*
_____
Jordan Schneider
Assistant Corporation Counsel

9