**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF NEW YORK. <br><br>              Plaintiff, <br><br> v. <br><br> YAZAM INC. D/B/A EMPOWER AND JOSHUA SEAR <br><br>              Defendants. | Civil Action No.  26-cv-3632 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS COMPLAINT**

Diana Sterk
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
diana.sterk@arnoldporter.com
*Attorney for Defendants Empower and Sear*

June 18, 2026

i

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND................................................................................ 5

LEGAL STANDARD........................................................................................... 7

ARGUMENT........................................................................................................ 8

I. The Complaint Must Be Dismissed For Insufficient Service Of Process ........................... 8

II. The Claims Against Mr. Sear Must be Dismissed for Lack of Personal Jurisdiction...... 12

III. The Claims Against Mr. Sear Must be Dismissed for Failure to State a Claim ............. 14

 1. The complaint pleads Defendant Sear's corporate title, not personal statutory liability. 14

 2. Corporate-officer status is not enough to establish a cognizable claim against
    Defendant Sear.................................................................................................... 15

 3. The Complaint seeks no declaratory relief against Defendant Sear and provides
    no basis for injunctive relief ............................................................................. 15

IV. The Claims Against Both Defendants Must be Dismissed for Failure to State a Claim 16

A. Count One Fails to State a Claim...................................................................... 16

 1. There is no applicable TLC license category for communications systems.................. 17

 2. Empower is not "dispatching" rides under applicable law ............................................ 18

 3. There is no TLC license for "conveying information" ..................................................... 19

 4. The City's refusal to plead Communications with Drivers of licensed vehicles fails
    to state a claim ............................................................................................... 20

B. Count Two Fails to State a Claim ..................................................................... 21

C. Count Three Fails to State a Claim .................................................................. 22

D. Count Four Fails to State a Claim..................................................................... 23

E. The City Fails to Plead Irreparable Harm and Other Elements for Injunctive Relief...... 23

F. The City Fails to Plead Claims Under Other Cited Statutes............................................ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arma v. Buyseasons, Inc.*,
591 F. Supp. 2d 637 (S.D.N.Y. 2008)..........................................................................12, 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................2, 8, 14, 20, 22, 23

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
667 F. Supp. 3d 83 (S.D.N.Y. 2023)...................................................................7, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................2, 8, 14, 23

*Bell v. State Univ. of N.Y. at Stony Brook*,
185 A.D.2d 925 (2d Dep't 1992) .......................................................................9, 10

*Matter of Bruno v. Ackerson*,
51 A.D.2d 1051 (2d Dep't 1976), aff'd, 39 N.Y.2d 718 (N.Y. App. 1976) ..............................9

*Colonial Funding Network, Inc. v. Finley*,
221 A.D.3d 498 (1st Dep't 2023) .............................................................................10

*Druyan v. Jagger*,
508 F. Supp. 2d 228 (S.D.N.Y. 2007)..........................................................................8

*East Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*,
16 N.Y.3d 775 (N.Y. App. 2011) .............................................................................15

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
422 F. Supp. 2d 357 (S.D.N.Y. 2006)........................................................................9

*George v. Pro. Disposables Int'l, Inc.*,
221 F. Supp. 3d 428 (S.D.N.Y. 2016)...................................................................7, 11

*Group One Ltd. v. GTE GmbH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) ...............................................................13, 14

*Matter of Hennessey v. DiCarlo*,
21 A.D.3d 505 (2d Dep't 2005).........................................................................7, 9

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..............................................................................................12

*Lentjes Bischoff GmbH v. Joy Env't Techs., Inc.*,
   986 F. Supp. 183 (S.D.N.Y. 1997)................................................................1, 24

*Morris v. N.Y. State Dep't of Taxation & Fin.*,
   82 N.Y.2d 135 (1993) ................................................................................12, 15

*O Zon Inc. v. Charles*,
   272 F. Supp. 2d 307 (S.D.N.Y. 2003)........................................................16, 23

*Pearson Cap. Partners LLC v. James River Ins. Co.*,
   151 F. Supp. 3d 392 (S.D.N.Y. 2015).............................................................8

*Peguero v. 601 Realty Corp.*,
   58 A.D.3d 556 (1st Dep't 2009) ................................................................12, 15

*Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*,
   893 F. Supp. 285 (S.D.N.Y. 1995)...............................................................24

*Matter of Robins v. Rosa*,
   225 A.D.3d 1110 (3d Dep't 2024) ...............................................................9, 11

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994).............................................................................8

*Wego Chem. & Mineral Corp. v. Magnablend, Inc.*,
   945 F. Supp. 2d 377 (E.D.N.Y. 2013) .............................................................14

*Weiss v. Glemp*,
   792 F. Supp. 215 (S.D.N.Y. 1992).................................................................7

**Statutes**

C.P.L.R. 302........................................................................................................12

C.P.L.R. 308.........................................................................................................9

C.P.L.R. 312-a .....................................................................................................9

C.P.L.R. 2103.......................................................................................................11

Fed. R. Civ. P. 12(b)(2)....................................................................................1, 7

Fed. R. Civ. P. 12(b)(5)....................................................................................1, 7

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 3, 7

Fed. R. Civ. P. 81(c) .............................................................................................7

N.Y.C. Admin. Code § 19-502(gg)......................................................................22

N.Y.C. Admin. Code § 19-506 ...................................................................................24

N.Y.C. Admin. Code § 19-511 ........................................................................... *passim*

N.Y.C. Admin. Code § 19-528 ........................................................................... *passim*

**Other Authorities**

35 R.C.N.Y. § 51-03 ...............................................................................................18, 22

35 R.C.N.Y. § 59A-01 *et seq.* ....................................................................................18

35 R.C.N.Y. § 59B *et seq.*..........................................................................................18

35 R.C.N.Y. § 59B-03(d)..............................................................................................21

35 R.C.N.Y. § 59B-03(g)(1)-(4) ..................................................................................21

35 R.C.N.Y. § 59D *et seq.* ..........................................................................................18

35 R.C.N.Y. § 59D-20(e)................................................................................................1

35 R.C.N.Y. § 77-01 *et seq.* .......................................................................................18

35 R.C.N.Y. § 78-01 *et seq.* .......................................................................................18

Fed. R. Civ. P. 65(d) ...................................................................................................24

Yazam Inc. d/b/a Empower ("Empower") and Joshua Sear (together, "Defendants") submit this memorandum of law in support of their motion to dismiss Plaintiff's ("the City's") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

**INTRODUCTION**

This action may not proceed in its current form. The City seeks sweeping injunctive, declaratory, and "other" relief against a Delaware software company and its Virginia-based CEO, yet it has not pled facts showing that Defendants violated the licensing provisions it invokes, has not properly served Defendants to acquire jurisdiction, and has not pled personal jurisdiction over Mr. Sear.  Indeed, although the requirement to show irreparable harm that is "likely and imminent, not remote and speculative" is "'[p]erhaps the single most important' element of the preliminary injunction test," the City does not bother to plead this harm, much less plead *any* allegation of a single driver, rider, or member of the public harmed by Empower's software or operations. *Lentjes Bischoff GmbH v. Joy Env't Techs., Inc.*, 986 F. Supp. 183, 187 (S.D.N.Y. 1997).  Instead, even though the Complaint cites Empower's website, which unequivocally states that "Every driver using Empower's software in the New York region must be a [New York Taxi and Limousine Commission or] TLC licensed driver AND may only use a TLC licensed vehicle,"[1] the City hides behind an ambiguous claim that it is "unable to confirm" this.

Defendants removed this action, and their deadline to present Rule 12 defenses is June 18, 2026. Defendants now move to dismiss the Complaint under Rules 12(b)(2), (5), and (6). The

---

[1] Exh. 7-9 to Sear Decl., Empower, *FAQ, Are drivers who use Empower's software in New York required to be licensed by the NYC Taxi and Limousine Commission ("TLC")?* https://faq.driveempower.com/hc/en-us/articles/39082332739597-Are-drivers-who-use-Empower-s-software-in-New-York-required-to-be-licensed-by-the-NYC-Taxi-and-Limousine-Commission-TLC (last visited June 18, 2026). As noted below, because the Complaint references the website, and specifically its presentation of information related to Subscribers, Defendants may rely on it in their motion to dismiss.

1

Court should decide these threshold issues before requiring Defendants to litigate the City's request for extraordinary preliminary relief.

The threshold defects are dispositive. The City alleges that Mr. Sear resides in Virginia and then formulaically recites, "upon information and belief," that he "directed, controlled, had authority to control, or participated in Empower's business operations" in New York City. Compl. ¶ 4. That is not personal jurisdiction, personal statutory liability, or a substitute for well-pled facts. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Complaint does not allege that Mr. Sear personally maintains any base, operates any communications system, dispatches any ride, directs or requires drivers to provide transportation, or was personally required to apply for any TLC license. The Complaint's sparse allegations against Mr. Sear identify no individual conduct by him that gives rise to personal jurisdiction or personal statutory liability.

Nor was service properly made on him or Empower. The City failed to serve Defendants through the method ordered by the state court—a fatal jurisdictional defect for which the court must dismiss the Complaint. The City sought to expedite the state court proceedings by obtaining an Order to Show Cause. That Order prescribed a specific service method: mailing the Order to Show Cause, supporting papers, Summons, and Verified Complaint to Defendants by overnight express mail and regular first-class mail at "1307 Dolley Madison Boulevard, 4th Floor, McLean, Virginia 22101," and emailing copies to Mr. Sear and to counsel who then represented Defendants in other matters by April 3, 2026. O.S.C. at 2, March 31, 2026. The City's affirmations of service and other evidence show that it did not comply with the service method set forth by the Order to

2

Show Cause, and therefore failed to properly serve Defendants.[2] *See* Jones Affirm., Apr. 2, 2026, Dkt. No. 1-3 at 151; Schneider Affirm. at 1, Apr. 7, 2026, Dkt. No. 1-3 at 152.

The pleading defects regarding Defendants also require dismissal under Rule 12(b)(6). The Complaint repeatedly labels Empower a "dispatcher," "base," "communications system," and "high-volume for-hire service," but those are legal conclusions, not facts. The facts pled describe a different model of a company that "provides drivers with software and support services that enable them to truly run their own businesses," and in which drivers "set their own rates," use independently-owned vehicles, connect with riders via a separate app, and get "100%" of any fares they earn. *See* Compl. ¶¶ 8-9, 14, 17. The Complaint does not allege that Empower contracts with drivers to provide transportation, receives fares from passengers, pays drivers, maintains a physical TLC base, affiliates vehicles with a TLC base, or directs or requires drivers to provide transportation. The City hand-waves over the facts in favor of legal conclusions. This is insufficient.

The Complaint also takes the tactically convenient position for the City's preliminary injunction request that TLC is "unable to confirm" whether drivers using Empower are TLC-licensed or whether their vehicles are TLC-licensed. Compl. ¶ 9. The Complaint's refusal to say that drivers and vehicles using Empower are TLC-licensed may serve the City's preliminary-injunction rhetoric—because acknowledging TLC licensure would undercut the City's public-safety and insurance-based irreparable-harm theory, *see* Pl.'s Mem. of L. in Supp. of Mot. Prelim. Inj. ("Mot.") at 17-22—but strategic ambiguity is not a substitute for pleading facts. Having invoked statutes that turn on licensed vehicles, licensed drivers, bases, or dispatching, the City

---

[2] Defendants' counsel informed the City's counsel weeks ago that Defendants would be willing to accept a service waiver request under Rule 4(d), but the City rejected the offer.

must plead facts supporting those predicates.  In short, the City must admit an indisputable fact in order to plead its claim: that every driver using Empower in New York City is licensed by the TLC and uses a TLC-licensed vehicle.

The City's own centerpiece allegation further illustrates its failure to plead necessary facts. The Complaint asserts that Mr. Sear testified that Empower "dispatched" rides in New York City. *See* Compl. ¶ 13. But the testimony the Complaint references says no such thing. It says that "Empower provides drivers with software and support services," that drivers "set their own rates," that drivers get "100%" of fares, and that "drivers using [Empower's] software and services provided" rides. *Id.* ¶ 14. The word "dispatch" appears only in the City's characterization, not in Mr. Sear's testimony. The City then leaps to a statutory conclusion that Empower "facilitat[ed] the dispatching" of trips without pleading facts showing that Empower dispatches or facilitates dispatching within the meaning of TLC rules. *Id.* ¶ 15.

Each count fails for the same reasons: the City pleads labels where the law requires facts. Count One does not identify any current standalone communications-system license; it rests on the same conclusory "dispatch" language for which the City fails to plead supporting facts; and it strategically avoids pleading communications with drivers of "licensed vehicles"—a required element of § 19-511, which the City alleges Defendants have violated. Count Two does not identify which type of base Empower supposedly is, does not plead any physical base location or affiliated-vehicle structure, and conflicts with TLC's framework that treats a High-Volume For-Hire Service ("HVFHS") license as a type of base license. Count Three rests on the same conclusory "dispatch" language absent from the referenced testimony and unsupported by pleaded facts. Count Four is a catchall § 19-528 claim that identifies no independent license obligation beyond Counts One through Three.  The City also fails to plead the basic elements for injunctive relief, and does not

state a claim under any other statutes cited in its Complaint.  Because the City fails to state a cognizable claim against Empower, all claims against Empower should be dismissed; because the claims fail as to Empower, they must also fail as to Mr. Sear.

## FACTUAL BACKGROUND

Empower is a software company that develops and sells software and related support services to drivers who choose to work for themselves ("Subscribers"). Compl. ¶ 14. Empower is not like Uber, Lyft, or a for-hire vehicle base. The City does not allege that Empower employs, pays, or directs drivers to provide transportation to anyone—because Empower does not.

In New York City, Empower sells software and related support services only to TLC-licensed drivers using TLC-licensed vehicles with TLC-required insurance.[3]  Subscribers, not Empower, set their own rates.  *See* Compl. ¶ 14.  And Subscribers, not Empower, make money from riders; Subscribers get 100% of the fares they charge their customers.  *See id*.[4]

The City's own quoted testimony from Mr. Sear confirms the point: Empower "provides drivers with software and support services," drivers "set their own rates," and drivers using Empower's software and services "provide" rides. *Id.* The testimony does not, as the City suggests, say that Empower "dispatches" drivers.  The City does not and cannot allege that Empower requires or directs Subscribers to accept trips; prohibits Subscribers from cancelling trips; or penalizes Subscribers for cancelling trips.

As such, Empower is fundamentally different from Uber and Lyft: The City does not and cannot allege that Empower owns or operates its own bases, sets fares, charges riders for rides, or contracts with or pays drivers to provide rides on Empower's behalf.  With Empower, individuals

---

[3] *FAQ, supra* note 1.

[4] *See also* Exh. 8 to Sear Decl., Empower, *Transforming Rideshare*,  https://driveempower.com/ (last visited June 18, 2026).

and small businesses that provide transportation services to the public are the customers; with Uber and Lyft, riders are the customers.[5]   Empower does not make any money from riders who use its software to book rides from Subscribers; its revenue comes entirely from subscription fees paid by Subscribers.[6]

The City has been fully aware that Empower has made its software available in the New York City metro area since 2022. *See* Compl. ¶ 7. In the intervening years, Empower's software has become widely adopted. In the week cited in the Complaint, over 10,000 drivers using Empower's software and services provided over a half million rides to 150,000 riders, including over 100,000 rides in New York City.   *See* Compl. ¶ 14. The TLC-licensed drivers who use Empower to work for themselves are making thousands of dollars more per month than they were making working for Uber or Lyft, and at the same time, riders are saving money.[7]

The City does not and cannot allege that Empower has ever hidden its operations from the City. To the contrary, Empower has communicated with TLC about its business since 2022. TLC apparently mailed a handful of administrative $100 civil-penalty notices in 2022 and 2023 based on the same allegation it makes here that Empower was operating without required licenses. *See* Compl. ¶ 11; Goldapper Affirm., Ex. 5, Dkt. No. 1-2 at 74-202. It also sent a letter in May 2022 from TLC General Counsel, Sherryl Eluto, confirming that it knew Empower was operating

---

[5] *See Transforming Rideshare*, *supra* note 4.

[6] See Exh. 7 to Sear Decl., Empower, *FAQ, How do I get paid by riders?*, https://faq.driveempower.com/hc/en-us/articles/23735366312845-How-do-I-get-paid-by-riders (last visited June 18, 2026).

[7] *See* New York City Council, Committee on Rules, Privileges, Elections, Standards and Ethics, Video of March 12, 2026 Meeting, https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=1397060&GUID=25602AFF-B102-47B3-9F52-B1B5A01B922E. The video can be accessed by clicking the "Video" hyperlink; Mr. Sear's testimony is at timestamp 2:47:30-2:50:38, and is authenticated at Sear Decl. ¶ 16.

without licensure. *See* Compl. ¶¶ 10, 11; Goldapper Affirm., Ex. 7, Dkt. No. 1-3 at 63. The City then ceased all further enforcement *for approximately three years*, before again mailing a handful of $100 citations in February 2026 along with a nearly identical letter, again from TLC General Counsel Eluto. *See* Compl. ¶ 12; Dkt. No. 1-3 at 65-140.

Defendants removed this case on May 1, 2026. The City moved to remand on May 29. The Court ordered that if the case were not remanded by June 18, 2026, Defendants could file their motion to dismiss.

## LEGAL STANDARD

After removal, the Federal Rules govern pleading and motion practice. Fed. R. Civ. P. 81(c). Defendants bring this motion pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6).

Rule 12(b)(5) governs dismissal for insufficient service of process. The plaintiff bears the burden of establishing that service was sufficient. *George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016). "In determining the validity of service prior to removal, a federal court must apply the law of the state in which the service was made." *Weiss v. Glemp*, 792 F. Supp. 215, 224 (S.D.N.Y. 1992). Under New York law, the method of service in an order to show cause "is jurisdictional in nature and must be strictly complied with." *Matter of Hennessey v. DiCarlo,* 21 A.D.3d 505, 505 (2d Dep't 2005). In considering a motion to dismiss for insufficient service, "a court must look to matters outside the complaint to determine whether it has jurisdiction." *George*, 221 F. Supp. 3d at 432 (internal quotation and alterations omitted).[8]

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over each defendant. *Bayshore Cap. Advisors, LLC v.*

---

[8] While Defendants believe Rule 12(b)(5) is the proper vehicle for raising the service issues in this motion, to the extent the Court concludes it is Rule 12(b)(4), Defendants invoke that rule too.

*Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023). "Pleadings that assert only conclusory non-fact-specific jurisdictional allegations or state a legal conclusion couched as a factual allegation do not meet this burden." *Id.* (internal quotations and citations omitted); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (a court cannot draw inferences in the plaintiff's favor in considering a Rule 12(b)(2) motion).

To survive a Rule 12(b)(6) motion for dismissal for failure to state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (2007). Courts need not accept as true legal conclusions, "threadbare recitals" of elements, or "naked assertion[s]" devoid of factual enhancement. *Iqbal*, 556 U.S. at 678–79 (2009). A claim is plausible only when the pleaded facts permit a reasonable inference of liability, not merely a "sheer possibility" of unlawful conduct. *Id.* at 678. On a Rule 12(b)(6) motion, the Court may consider the complaint, documents attached to or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *Druyan v. Jagger*, 508 F. Supp. 2d 228, 235–36 (S.D.N.Y. 2007).  Because the Complaint expressly references Empower's website as the means by which Empower allegedly solicits drivers, Compl. ¶ 17, website materials referenced or relied upon by the Complaint may be considered without converting this motion into one for summary judgment. *See Druyan*, 508 F. Supp. 2d at 235–36; *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 400 (S.D.N.Y. 2015).  The same is true for the full testimony of Mr. Sear referenced in the Complaint.  *Id.*

## ARGUMENT

### I.      The Complaint Must Be Dismissed For Insufficient Service Of Process

The Complaint should be dismissed for insufficient service of process, and consequently, lack of personal jurisdiction, because the City failed to serve Defendants in the manner required

by the state court's Order to Show Cause. The City did not serve Defendants with the lawsuit by personal service; it did not avail itself of the waiver process under New York C.P.L.R. 312-a that permits service by mail with acknowledgment; and it did not obtain an order permitting service by email under C.P.L.R. 308(5) or 311(b) upon a showing that ordinary service was impracticable. Instead, the City elected to proceed through an Order to Show Cause prescribing a precise substitute method of service for the order, supporting papers, *and* the Verified Complaint and Summons. Having chosen that route, the City was required to follow the order exactly. It did not.

As stated above, to determine whether service was proper, courts apply the law of the state from which the case was removed. *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006). New York law is clear that "[t]he method of service provided for in an order to show cause is jurisdictional in nature and must be strictly complied with." *Matter of Hennessey*, 21 A.D.3d at 505; *see also Bell v. State Univ. of N.Y. at Stony Brook*, 185 A.D.2d 925, 925 (2d Dep't 1992) (holding the service provision in an "order to show cause is jurisdictional in nature and must be literally followed"). That rule applies even where the method used might seem close enough to, or even "better" than, the method prescribed. *Matter of Bruno v. Ackerson*, 51 A.D.2d 1051, 1051 (2d Dep't 1976), aff'd, 39 N.Y.2d 718 (N.Y. App. 1976) (service invalid where order to show cause required papers to be mailed and affixed to the door of the defendant's residence, but they were mailed and hand-delivered to the defendant's spouse at his residence); *Matter of Robins v. Rosa*, 225 A.D.3d 1110, 1112 (3d Dep't 2024) (service by the correct method but at an address different than that in the show cause order was insufficient, even where the address used was correct and the plaintiff demonstrated actual notice and receipt by the defendants). Because the service method in an order to show cause must be followed literally, and the City did not do so here, the City's service is insufficient.

The Order to Show Cause here was precise. It provided:

> IT IS FURTHER ORDERED that service of a copy of this Order to Show Cause, together with the papers upon which it is based and the Summons and Verified Complaint, be made upon the defendants by **mailing a copy thereof by overnight express mail to 1307 Dolley Madison Boulevard, 4th Floor, McLean, Virginia 22101 and regular first class-mail**, on or before the 3[rd] day of April, 2026, and by e-mailing a copy thereof to defendant Joshua Sear at joshsear@rideempower.com, and counsel for defendants at matthew.madden@hoganlovells.com, fleming.farrell@hoganlovells.com, ryan.hartman@arnoldporter.com, on or before the 3[rd] day of April, 2026, and that this be deemed good and sufficient service on the defendants.

O.S.C. at 2, March 30, 2026, Dkt. No. 1-3 at 148 (emphasis added).

The City's own affidavits of service show that it did not comply with that order. First, the order required mailing to 1307 Dolley Madison Boulevard, 4th Floor, McLean, Virginia 22101. The City's affirmation of service shows that the City omitted the required "4th Floor" from the address. *See* Dkt. No. 1-3 at 151. That was not the address prescribed by the Order to Show Cause. In fact, the City not only omitted the 4th Floor from both envelopes that it sent; it added to the UPS envelope the zip+4 code for the building lobby, rather than Empower's 4th floor office. *See* Sear Decl. ¶¶ 31-37 and Exhs. 3-6. Because the prescribed method of service is jurisdictional and "must be literally followed," these defects alone are fatal. *Bell*, 185 A.D.2d at 925.

Second, the Order required that the papers be served "by mailing a copy thereof by overnight express mail" to the specified address. The City did not do that. Its affirmation states that the City "dispatched the papers by overnight delivery service." Dkt. No. 1-3 at 151. But the delivery service was not overnight express mail, but rather UPS. *See* Sear Decl. ¶¶ 31-37 and Exhs. 3-6. The City also sent a copy by priority mail, but priority mail is not overnight express mail. *See id.*; *Colonial Funding Network, Inc. v. Finley*, 221 A.D.3d 498, 499 (1st Dep't 2023) (service by priority mail is insufficient where order specifies express mail).

Third, the Order separately required service by "regular first class-mail." The City's affirmation says that it separately mailed the papers by "first-class" mail in compliance with that requirement, but the only envelope Empower received by mail was the priority mail envelope. Dkt. No. 1-3 at 151; Sear Decl. ¶¶ 31-37 and Exhs. 3-6. Nor can UPS substitute for the mail service the court specifically prescribed. *Finley*, 221 A.D.3d at 499.[9]

Finally, the City's affirmation contains multiple references to provisions of C.P.L.R. 2103(b), which governs service on attorneys rather than businesses or individual defendants, and inexplicably states that documents were mailed "to the person at the address designated by him or her for that purpose." Dkt. No. 1-3 at 151. This muddles the record and further underscores that the City failed to prove proper service as ordered by the state court.

These defects are not technicalities. The City asked the state court to deem a specific method "good and sufficient" service. Having obtained that order, the City was required to comply strictly. The City bears the burden of proving that service was proper. *George*, 221 F. Supp. 3d at 432. It cannot meet that burden here. The City's failure to serve process in accordance with the order is jurisdictional, and the Complaint should therefore be dismissed for improper service of process and lack of personal jurisdiction.

---

[9] The City's failure to follow the court-ordered method—which the City itself had proposed to the court in the City's own proposed order—had consequences. No showing of prejudice is required because the service provision is jurisdictional. *Matter of Robins*, 225 A.D.3d at 1110-12. However, the practical consequences confirm why strict compliance matters. Because the City omitted the "4th Floor" and used a commercial delivery service rather than overnight U.S. postal express mail, the UPS package was not delivered the next day to Empower's mail area for postal deliveries. Sear Decl. ¶¶ 31-37 and Exhs. 3-6. Instead, Empower believes that the UPS package was left somewhere in a common area of the building at what UPS's delivery confirmation says was the front door. *Id.* To Empower's knowledge, the Priority Mail envelope was not delivered until the following week. *Id.*

**II.      The Claims Against Mr. Sear Must be Dismissed for Lack of Personal Jurisdiction**

In diversity cases, a court must look to the forum state's long-arm statute to assess whether it has personal jurisdiction over a defendant. *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 646 (S.D.N.Y. 2008).  Under the New York long-arm statute, a court may exercise jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state," but only where the cause of action arises from those New York contacts. C.P.L.R. § 302(a)(1). The City therefore must plead facts showing that Mr. Sear personally engaged in purposeful business activity in or directed to New York and that those contacts bear a substantial relationship to the licensing claims asserted here. If the long-arm statute is satisfied, the City must also show that exercising jurisdiction is consistent with due process— that is, that Mr. Sear has the requisite minimum contacts with New York and that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Complaint fails to make even a prima facie showing of personal jurisdiction over Mr. Sear.  It alleges that Mr. Sear resides in Virginia and then recites, on information and belief, that he "directed, controlled, had authority to control, or participated in Empower's business operations" in New York City. Compl. ¶ 4. It identifies no conduct by Mr. Sear in New York that gives rise to the City's claims. It does not plead that Mr. Sear personally operated any apps, operated a communications system, maintained a physical base, dispatched vehicles, contracted with drivers, or conducted any of the licensable activities alleged in the Complaint. It does not establish *any* contacts between Mr. Sear and the state. It does not plead predicates for veil-piercing. *See Morris v. N.Y. State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141–42 (1993). It does not plead that kind of tortious malfeasance by a corporate officer that might subject one to personal liability. *See, e.g., Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 559 (1st Dep't 2009).

12

Nor does it plead facts that would permit Empower's alleged New York contacts to be imputed to Mr. Sear individually. A general allegation that an officer controls a corporation is insufficient to establish personal jurisdiction under the long-arm statute or otherwise. *See, e.g., Arma*, 591 F. Supp. 2d at 647 (finding no personal jurisdiction pursuant to New York's long-arm statute over president and CEO of defendant company, where plaintiff provided only conclusory allegations that he controlled the corporation and did not specifically allege the role he played in alleged copyright infringement); *Group One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 333 (E.D.N.Y. 2021).

The only specific conduct by Mr. Sear that the City identifies is his remote testimony at a City Council hearing (testimony that the City mischaracterizes). *See* Compl. ¶¶ 13-14; *see also* Video of March 12, 2026 Meeting, *supra* note 7. But the City's claims do not arise from that testimony. They arise from alleged TLC licensing violations by Empower's software business. The testimony therefore does not supply any relevant forum conduct by Mr. Sear, or the required nexus between that forum conduct and the claims against him.

Exercising jurisdiction over Mr. Sear would also fail the constitutional test. The Complaint alleges no facts showing that Mr. Sear personally availed himself of New York in connection with the specific licensing conduct at issue, and it would be unreasonable to require a Virginia resident to defend individual claims in New York based only on corporate title, conclusory allegations, and testimony given as Empower's CEO. The City's remedy, if it ever proves a claim, is against Empower; Rule 65(d) separately governs the extent to which any injunction may bind corporate officers or agents acting on the company's behalf.

The claims against Mr. Sear should therefore be dismissed for lack of personal jurisdiction. Neither the long-arm statute nor the Constitution permits the City to take the unreasonable and

13

burdensome step of haling a Virginia resident into New York individually based only on his status

as CEO and conclusory allegations that duplicate the claims against the corporation. *Arma*, 591 F.

Supp. 2d at 647–48; *Group One*, 523 F. Supp. 3d at 333; *see also Wego Chem. & Mineral Corp.*

*v. Magnablend, Inc.*, 945 F. Supp. 2d 377, 385-86 (E.D.N.Y. 2013).

### III.    The Claims Against Mr. Sear Must be Dismissed for Failure to State a Claim

1.    The Complaint pleads Defendant Sear's corporate title, not personal statutory liability

In addition to the City's failure to establish personal jurisdiction, the Complaint's

conclusory allegations against Mr. Sear also fail to state a claim against him.

The City alleges that Mr. Sear resides in Virginia and then formulaically recites, "upon

information and belief," that he "directed, controlled, had authority to control, or participated in

Empower's business operations" in New York City. Compl. ¶ 4. That is not personal statutory

liability or a substitute for well-pled facts. *See, e.g., Iqbal*, 556 U.S. at 678–79 (2009); *Twombly*,

550 U.S. at 555 (2007). As noted above, the Complaint does not allege that Mr. Sear personally

contracts with any driver, maintains any base, operates any communications system, dispatches

any ride, directs or requires drivers to provide transportation, or was personally required to apply

for any TLC license.

Under *Twombly* and *Iqbal*, the court need not accept legal conclusions or "naked

assertion[s]" unsupported by factual content. 550 U.S. at 557; 556 U.S. at 678. The allegation that

Mr. Sear "directed, controlled, had the authority to control, or participated" in the alleged conduct,

Compl. ¶ 4, without any substantiating facts, is precisely the kind of formulaic recitation of a legal

conclusion that should be disregarded.

2.      Corporate-officer status is not enough to establish a cognizable claim against Defendant Sear

New York law does not impose personal liability on a corporate officer merely because the officer holds a title or because the corporation allegedly violated a city regulation. To pierce the corporate veil, a plaintiff must plead complete domination and use of that domination to commit a fraud or wrong against the plaintiff. *Morris*, 82 N.Y.2d at 141–42 (1993). A plaintiff seeking to impose liability on an officer or shareholder for corporate acts must plead abuse or perversion of the corporate form. *East Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.*, 16 N.Y.3d 775, 776–77 (N.Y. App. 2011). The Complaint does not plead any facts that pierce the corporate veil. It does not allege undercapitalization, commingling, disregard of corporate formalities, misuse of Empower as Mr. Sear's alter ego, fraud, or abuse of the corporate form.

Nor does the Complaint plead an independent personal-participation theory. New York courts may impose personal liability where a corporate officer personally engages in a tortious act, but not merely for corporate nonfeasance (i.e., failure to act) or by virtue of title. *Peguero*, 58 A.D.3d at 559 (1st Dep't 2009).  Here, the Complaint quotes letters that the City sent to Mr. Sear as Empower's CEO, and references Mr. Sear's remote City Council testimony that "drivers using [Empower's] software and services" provided rides. Compl. ¶ 14. Even if those allegations are relevant as to Empower, they still describe corporate conduct and activity, not actionable conduct by Mr. Sear. The Complaint pleads no facts supporting Mr. Sear's liability, only the bald conclusion that he "directed, controlled, had the authority to control, or participated in Empower's business operations." *Id.* ¶ 4.

3.      The Complaint seeks no declaratory relief against Defendant Sear and provides no basis for injunctive relief

Further emphasizing the lack of any claim against Mr. Sear, the Complaint asks for no declaratory relief against him—only against Empower. Moreover, it requests an injunction against

15

"Defendants," without pleading any conduct by Mr. Sear that would entitle the City to an injunction against him.  This is insufficient—the Complaint must allege wrongful conduct by each Defendant that would entitle the City to an injunction against that Defendant.  *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003).

**IV.    The Claims Against Both Defendants Must be Dismissed for Failure to State a Claim**

The Complaint also fails to plead the statutory predicates for the relief the City seeks. Count One asserts a communications-system theory under § 19-511, but the City does not identify any current standalone communications-system license that Empower was required to obtain and does not plead communications with drivers of "licensed vehicles," again in an apparent, misguided effort to avoid undercutting its injunctive relief request.  It also pleads "dispatching" as a label while failing to plead any factual predicate (for example, it fails to plead that Empower directs drivers to perform or accept rides or that this direction comes from a base station).

Count Two asserts a base-license theory, but does not plead which base category Empower supposedly fits or facts showing that Empower fits that base category's definition.  It also does not plead any physical base location, any affiliated-vehicle structure, or facts showing that Empower directs or requires drivers to provide transportation. Count Three asserts a high-volume for-hire service ("HVFHS") theory, but rests on conclusory "dispatch" language absent from the referenced testimony and unsupported by pleaded facts showing that Empower directs or requires drivers to provide transportation within the meaning of TLC rules. Count Four is a catchall § 19-528 claim, but § 19-528 does not create a freestanding "for-hire transportation service" license; it applies only if some other specific license is required.

**A.    Count One Fails to State a Claim**

Count One alleges that Defendants failed to obtain a communications-system license in violation of Administrative Code §§ 19-511 and 19-528.  Compl. ¶ 36.  But § 19-511(a) directs

16

TLC to create licensing requirements for certain communications systems – it does not itself create a communications-system license – and TLC has not created any communications-system license that applies here.  Moreover, the City has failed to show that Empower is "dispatching" as defined by § 19-511(a).  And § 19-528 is simply derivative of § 19-511; if there is no violation of the latter, there is no violation of the former (*see infra*, at § IV(D)).

These three bases for dismissal also appear in Defendants' brief in opposition to the City's request for a preliminary injunction. The City's tactical pleading in its complaint also raises a fourth reason that the Court may consider on a motion to dismiss: The City fails to plead communications with drivers of licensed vehicles.

1.    There is no applicable TLC license category for communications systems

First, there is not a current, applicable TLC license category through which any app-based "communications system" must be separately licensed.  Administrative Code § 19-511(a) provides that:

> **The commission [i.e., TLC] shall require licenses** for the operation of two-way radio or other communications systems used for dispatching or conveying information to drivers of licensed vehicles, including for-hire vehicles or wheelchair accessible vans and shall require licenses for base stations, **upon such terms as it deems advisable** and upon payment of reasonable license fees of not more than five hundred dollars a year.

*Id.* (emphasis added).  By its plain terms, § 19-511(a) is directed at TLC, stating that TLC must require licenses for certain activity on terms that TLC deems advisable and on payment of a capped license fee. *Id.* Section 19-511(a) does not itself create the license requirement; it directs TLC to do so.[10] TLC has adopted current licensing requirements for certain types of For-Hire

---

[10] The same statutory command requiring TLC action is seen throughout the relevant regulation. *See, e.g.,* §§ 19-507(a), 19-517, 19-518(f).  In contrast, where the regulation creates a requirement on a person or entity, it says so.  See, e.g., 19-509(a) ("It shall be unlawful for any person to engage in…")

Vehicles, 35 R.C.N.Y. § 59A-01 *et seq.,* for Bases and HVFHS Bases, 35 R.C.N.Y. § 59B & 59D *et seq.*, and for Providers of E-Hail Applications for taxis and other street-hailed vehicles, 35 R.C.N.Y. § 78-01 *et seq.*, but no current regulation requires any general license for app-based communications systems.  A review of TLC's website—which offers a variety of licenses but no such standalone communications-system license—further confirms this. *See* NYC Taxi & Limousine       Commission,       Businesses,       *For-Hire       Vehicle       Bases,* https://www.nyc.gov/site/tlc/businesses/for-hire-vehicles.page  (last  visited  June  18,  2026) ("Livery Base," "Black Car Base," "Luxury Limousine Base," "High Volume For-Hire Services," and "FHV Interior Advertising Provider License"; also listing license categories for "Yellow Cab," "Green Cab," "For-Hire Vehicle Base," and "Paratransit and Commuter Van Authority"). And although TLC initially promulgated licensing requirements for "dispatch service providers" in 2015, its 2020 rulemaking repealed these licensing provisions. R.C.N.Y. § 77-01 *et seq.* (repealed 2021). Therefore, the City cannot establish that a standalone communications-system license exists under the regulatory framework or applies to Empower.

 2. Empower is not "dispatching" rides under applicable law

Second, even if such a license requirement existed, the City does not plead and cannot show that Empower is "dispatching" rides under § 19-511(a) as the term is defined by TLC.

A dispatch is <u>not</u> just any communication about a potential ride.  It is "a request made from a Base Station to a Driver, *directing* the Driver to provide transportation to a passenger who has previously  arranged  for  such  transportation."   35  R.C.N.Y.  §  51-03  (emphasis added). That definition requires more than software displaying a rider's request or trip information. It requires a base station to *direct* a driver to provide transportation to a passenger. The Complaint does not allege that Empower *directs* anyone to provide transportation to anyone.

18

The City does not plead that Empower requires Subscribers to accept ride requests, penalizes Subscribers for rejecting ride requests, or instructs Subscribers to provide transportation to any rider.  Its Complaint does not dispute that, once a Subscriber accepts a request, there is nothing, other than New York anti-discrimination laws, preventing them from cancelling without penalty.

The City's allegations do not plausibly plead TLC-defined dispatch, i.e., that Empower directs drivers to provide transportation services to anyone.  This alone is sufficient to dismiss Count One.

### 3.    There is no TLC license for "conveying information"

Nor can the City salvage Count One by isolating the phrase "conveying information to drivers of licensed vehicles." First, no TLC license requirement exists for communications systems that convey information to drivers of licensed vehicles – because TLC has not created one. *See supra* at § IV(A)(1).  This alone is fatal.

Second, the City's newfound reading would have no limiting principle.  If "conveying information to drivers" meant any information transmitted to a driver, then ordinary phones, text messages, email, Google Maps, Waze, Facebook group ride requests, cellular networks, and a rider's own message to a driver would all become licensable TLC communications systems whenever used by a TLC-licensed driver.  That is not what § 19-511(a) means, and TLC does not treat it as meaning this. The phrase must be tied to the *dispatch* function that the statute is regulating.

* * *

The only allegation pled in an attempt to show that Empower was "dispatching" rides is voluntary remote testimony delivered in support of the then-incoming TLC Chair's nomination (not in "defiance" of anything) by Mr. Sear at a City Council hearing that the City mischaracterizes.

19

*See* Video of March 12, 2026 Meeting, *supra* note 7.[11] Mr. Sear's testimony confirms that *drivers* using Empower software and services were providing over 100,000 rides per week in New York City and that drivers set their own rates and get 100% of the fare. Compl. ¶ 13-15; Mot. at 11. Notably, the testimony quoted by the City does not include the word "dispatch" or the phrase "facilitates dispatching," as Mr. Sear did not say that word or phrase, because that is not how Empower operates. The City has not plausibly pled TLC-defined dispatch.  Under *Iqbal*, the City's labels and conclusions need not be accepted. 556 U.S. at 678.

        4.      The City's refusal to plead communications with drivers of licensed vehicles fails to state a claim

Additionally, § 19-511(a) is limited to communications systems used for dispatching or conveying information to drivers of "licensed vehicles." But the Complaint alleges that TLC is "unable to confirm" if drivers using Empower "are TLC-licensed drivers operating TLC-licensed for-hire vehicles." Compl. ¶ 9.

Empower disputes this.  "Every driver using Empower's software in the New York region must be a [New York Taxi and Limousine Commission or] TLC licensed driver AND may only use a TLC licensed vehicle," as Empower's website cited in the City's complaint states.[12]   But on a motion to dismiss, this is a pleading problem that the City has elected to create.   The Complaint's refusal to say that drivers and vehicles using Empower are TLC-licensed may avoid undercutting the City's public-safety and insurance-based irreparable-harm theory in seeking a preliminary injunction.  But having invoked a statute that turns on drivers of

---

[11] Because the testimony is quoted and referenced throughout the Complaint, the Court is free to consider it in its entirety.

[12] *FAQ*, *supra* note 1.

licensed vehicles, the City must plead facts supporting those predicates.  Its failure to do so also requires dismissal of this count.

###### B.    Count Two Fails to State a Claim

Count Two alleges that Empower and Mr. Sear failed to obtain a base license in violation of §§ 19-511 and 19-528.  Compl. ¶¶ 39–42. But TLC rules do not create a generic "base" category. A "For-Hire Base" or "Base" is a Commission-licensed business and physical location from which FHVs are dispatched, and it must fall into one of four categories: (1) a black car base, (2) livery base/base station, (3) luxury limousine base, or (4) HVFHS.  R.C.N.Y. § 59B-03(g)(1)-(4).

The City makes no attempt to allege facts showing that Empower falls into the first three categories. It does not allege facts showing that Empower is a black car base (i.e., all of its vehicles are owned by franchisees of the base or are members of a cooperative that owns the base, and more than 90% of the base's business is on a payment basis other than direct cash payment by a passenger). *See* R.C.N.Y. § 59B-03(d). It does not allege that Empower meets the different vehicle and fare characteristics of a livery base.  *See id.* § 59B-03(n). It does not allege facts showing that Empower meets the different garage-to-garage and payment characteristics of a luxury limo base. *See id.* § 59B-03(q).

The City attempts to allege that Empower is an HVFHS, but whether or not Empower is an HVFHS is the subject of Count Three, and TLC treats an HVFHS license as its own type of base license: an HVFHS "shall not hold any For-Hire Base License other than a High-Volume For-Hire Service License." 35 R.C.N.Y. § 59D-20(e). The City therefore cannot use Count Two as an undifferentiated "base" claim while reserving its actual HVFHS theory for Count Three. And for the reasons addressed below, the HVFHS theory fails because Empower does not "dispatch" or "facilitate the dispatching" of trips. *See infra* at § IV(C). Because the City has not shown that

21

Empower fits any non-HVFHS base category, and its HVFHS theory rises or falls with Count Three, the City fails to plead a claim under Count Two.

### C.    Count Three Fails to State a Claim

Count Three rests on the conclusory allegation that Empower is an HVFHS under § 19-548. Compl. ¶¶ 43–47. But the HVFHS definition requires more than high ride volume or app-based connection of riders and drivers. It contains two separate requirements: (1) the business must "offer[], facilitate[] or otherwise connect[] passengers to for-hire vehicles by prearrangement" through a passenger-facing booking tool, *and* (2) "dispatch[], or facilitate[] the dispatching of," 10,000 or more trips in the City in one day. N.Y.C. Admin. Code § 19-502(gg). TLC rules similarly define an HVFHS as a facility that "(1) is a Commission-licensed business, (2) facilitates or otherwise connects passengers to for-hire vehicles by prearrangement, including through one or more licensed For-Hire Bases, using a passenger-facing booking tool, *and* (3) dispatches or facilitates the dispatching of ten-thousand (10,000) or more trips in the City per day." 35 R.C.N.Y. § 51-03.

The City has not alleged facts showing that Empower satisfies the dispatch element.  As explained above in response to Count One, "dispatch" is a defined term: "a request from a base station to a driver directing that driver to provide transportation to a passenger." 35 R.C.N.Y. § 51-03. And for the reasons explained above, Empower does not dispatch. *See supra* at § IV(A).

Nor does the City allege any facts to show that Empower "facilitate[s] the dispatching" of trips. The City cannot avoid the defined term "dispatch" by focusing on "facilitates." The City must identify and plead facts showing an actual dispatch that Empower facilitates. It has not done so, and cannot do so, because there is no "dispatch" for the reasons identified in response to Count One.  Legal labels and conclusions are not a substitute for properly pled facts. *Iqbal*, 556 U.S. at 678.  Count Three must be dismissed.

22

D.      **Count Four Fails to State a Claim**

Count Four is a catchall claim alleging that Defendants engaged in a trade, business, or activity requiring a license under Title 19, Chapter 5 of the Administrative Code.  Compl. ¶¶ 48–51.

Administrative Code § 19-528(a) applies only to a person otherwise "required to be licensed" under Chapter 5 of the Code and does not itself identify the relevant license. Count Four does not identify any independent license beyond the theories already pleaded in Counts One through Three. Compl. ¶¶ 48–51. Therefore, if Counts One through Three fail, which they do, Count Four necessarily fails.

The City repeatedly labels Empower's business an "unlicensed for-hire transportation service," but does not identify a freestanding "for-hire transportation service" license. TLC's scheme regulates specific categories: drivers, vehicles, bases (including HVFHSs), and other defined businesses or equipment. A generic allegation that "applicable licenses" were required does not adequately plead alleged violations of specific TLC licensing requirements. *See* Compl. ¶¶ 1, 9, 18–19, 49–51; Mot. at 4, 17; *Iqbal*, 556 U.S. at 678–79 (2009); *Twombly*, 550 U.S. at 555 (2007). It also fails to give Empower fair notice of this claim. *See Twombly*, 550 U.S. at 545 (the Federal Rules require that a complaint give the defendant fair notice of the claim and grounds upon which it rests). This count must be dismissed as well.

E.      **The City Fails to Plead Irreparable Harm and Other Elements for Injunctive Relief**

"There is no 'injunctive' cause of action under New York law or federal law. Instead, [plaintiffs] must allege some wrongful conduct on the part of [the defendant] for which their requested injunction is an appropriate remedy." *O Zon Inc.*, 272 F. Supp. 2d at 312. "Moreover, they must allege that they will suffer irreparable harm because of the conduct, e.g., that they have

23

no adequate remedy at law, and that the balance of equities weighs in their favor." *Reuben H. Donnelley Corp. v. Mark I Marketing Corp.*, 893 F. Supp. 285, 293 (S.D.N.Y. 1995). The requirement to show irreparable harm that is "likely and imminent, not remote and speculative" is "'[p]erhaps the single most important' element of the preliminary injunction test." *Lentjes*, 986 F. Supp. at 187 (S.D.N.Y. 1997).  Nonetheless, the City fails to plead any of this here – and in fact, fails to plead that a single rider, driver, or member of the public has actually been harmed by Empower's software or operations or any action by Mr. Sear.   This too requires dismissal.

F.      **The City Fails to Plead Claims Under Other Cited Statutes**

Finally, the Complaint asks the Court to issue an injunction under Administrative Code § 19-506, but fails to plead facts showing a standalone § 19-506 claim.  Section 19-506(b) concerns persons who permit another to operate, or knowingly operate or offer to operate, a vehicle for hire without the required vehicle license; § 19-506(d) concerns persons who drive or operate for hire without the required driver's license. *See* Compl. Prayer for Relief ¶¶ B, G–H.  The City does not identify any unlicensed driver, any unlicensed vehicle, any vehicle owned or operated by Empower or Mr. Sear, or any facts showing that Empower or Mr. Sear permitted operation of a particular unlicensed vehicle, let alone did so knowingly. To the contrary, Empower's website cited by the City confirms that Empower requires drivers and vehicles to have the requisite TLC licenses. Any requested relief premised on § 19-506 also fails to state a claim on which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety, and the Court should grant Defendants any other relief to which they are entitled.

Dated: June 18, 2026

/s/ Diana Sterk
Diana Sterk
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
diana.sterk@arnoldporter.com

*Attorney for Defendants Empower and Sear*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(c), I hereby certify as follows: (i) according to Microsoft Word, the portions of this memorandum that must be included in a word count contain 7,753 words; and (ii) this memorandum complies with the word count limit set forth in Local Rule 7.1(c) and Section 2(B)(i) of the Court's Individual Practices.

/s/ Diana Sterk

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, I filed this through the ECF system, which served a copy on counsel for all parties.

/s/ Diana Sterk