**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF NEW YORK<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>YAZAM INC. D/B/A EMPOWER AND JOSHUA SEAR<br><br>　　　　　Defendants. | Civil Action No.  26-cv-3632<br><br> Hon. Edgardo Ramos<br><br>**DECLARATION OF JOSHUA SEAR IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to 28 U.S.C. § 1746, the undersigned makes the following declaration:

My name is Joshua Sear.  I am over 18 years old, of sound mind, and capable of making this declaration, which is true and accurate to the best of my knowledge, information, and belief.

1.　　　I am the CEO of Yazam Inc., d/b/a Empower.

2.　　　I submit this declaration to provide certain facts and authenticate certain documents in connection with Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction and Defendants' Motion to Dismiss Plaintiff's Complaint.

**Opposition to the City's Motion for a Preliminary Injunction**

3.　　　Empower is a software company that develops and sells software and related support services to drivers who choose to work for themselves ("Subscribers"), instead of for rideshare companies like Uber or Lyft. For New York City, Empower sells only to TLC-licensed drivers using TLC-licensed vehicles with TLC-approved insurance.

4.　　　Using Empower's software, Subscribers, not Empower, decide whether or not to accept requests from riders.  Subscribers, not Empower, also set their own rates and make money from riders; Subscribers get 100% of the fares they charge their customers.

1

5. Consequently, Subscribers, who use Empower's software to run their own businesses, charge riders 20% less than Uber and Lyft on average (which amounts to tens of millions of dollars in savings for riders per year) and still earn substantially more working for themselves than they would working for Uber or Lyft.

6. Empower is also not like Uber, Lyft, or a for-hire vehicle base. Empower does not employ, pay, or direct drivers to provide transportation to anyone. Uber and Lyft – which own and operate their own bases – set fares, charge riders as much as possible for rides, and contract with and pay drivers as little as possible to provide rides on their behalf. Empower does not make any money from riders who use its software to book rides from Subscribers; its revenue comes entirely from subscription fees paid by Subscribers. Uber and Lyft, on the other hand, make their money by charging riders as much as possible for rides and paying drivers as little as possible for providing those rides. With Empower, individuals and small businesses that provide transportation services to the public are the customers; with Uber and Lyft, riders are the customers.

7. Subscribers using Empower's software earned over $15 million last month in the New York City metro area.

8. Subscribers using Empower's software currently average approximately $4 million per week in New York City earnings.

9. Empower does not own or operate a TLC base and does not own or operate any vehicles.

10. Empower does not dispatch or facilitate the dispatching of trips in the New York City metro area or elsewhere. Empower does not direct anyone to provide transportation to anyone. Empower does not require or direct Subscribers to accept trips or provide transportation to any rider. Subscribers choose whether or not to accept ride requests and can decline or cancel a trip at

any time, without penalty; once a Subscriber accepts a request, there is nothing, other than compliance with applicable laws, preventing them from cancelling without penalty. Put differently, Empower does not require Subscribers to accept ride requests, penalize Subscribers for rejecting ride requests, or instruct Subscribers to provide transportation to any rider.

11.     When riders go to book a ride using Empower's software, they are presented with a fare estimate that is based on the rate cards of nearby Subscribers most likely to receive and accept their ride request.  Once a Subscriber accepts a rider's request, the rider is shown the actual fare, almost always within pennies of the estimate presented, that their driver will charge them. The rider then has the ability to cancel the ride without penalty.  Subscribers also cannot change the amount they charge (absent a destination change or additional stop request) once they have received a request.

Empower's Dealings with the City

12.     Empower has never hidden its operations from the City. To the contrary, Empower has openly communicated with TLC about its business since 2022. Empower has met or communicated with TLC on multiple occasions, most recently on March 31, 2026.

13.     Because Empower does not generate any revenue from riders who use Empower's software to book rides from Subscribers, it has no sales tax to collect or remit on amounts paid by riders to drivers.  Empower has nonetheless offered to facilitate the payment of any taxes, fees, or other amounts from Subscribers, but has been told multiple times that the City is not interested, most recently on March 31, 2026, after this lawsuit was filed, in a call with TLC's senior leadership.  That call included Michelle Goldberg-Cahn (City Law Department), Sherryl Eluto (TLC General Counsel), Alison Hartwell (TLC Deputy General Counsel), James DiGiovanni

(TLC Deputy Commissioner for Policy and External Affairs), and Aisha Richard (TLC Deputy Commissioner for Licensing and Standards).

14.  Empower does, however, pay 8.875% of its subscription revenue from New York in software sales tax to the City and State of New York.

15.  Empower has also repeatedly offered to provide trip data to TLC on behalf of Subscribers, but again has been informed that the City is not interested.

16.  On March 12, 2026, I voluntarily delivered testimony remotely in support of the then-incoming TLC Chair's nomination at a City Council hearing.  A link to the testimony is here: https://legistar.council.nyc.gov/MeetingDetail.aspx?ID=1397060&GUID=25602AFF-B102-47B3-9F52-B1B5A01B922E. The video can be accessed by clicking the "Video" hyperlink, and my testimony is at timestamp 2:47:30-2:50:38.

17.  The claims of harm the City alleges regarding insurance, including "potential loss or denial of commercial auto insurance coverage and lack of workers' compensation coverage in the event of a collision," are false.

18.  I was informed by a former senior TLC official that: while he worked at TLC, TLC researched whether Subscribers who use Empower in New York City had adequate insurance; that TLC determined that every TLC-licensed driver has adequate insurance when providing for-hire vehicle services on behalf of themselves; that TLC had conducted this research at the request of Uber's lobbyists; and that he has personal knowledge of these facts.

Harm from the City's Relief

19.  In the intervening years since 2022, Empower's software has become widely adopted and used throughout New York City. As stated above, Subscribers using Empower's

4

software earned over $15 million last month alone in the New York City metro area. Since 2022, Subscribers in New York City have provided millions of rides.

20.    While there is no irreparable harm to the City if Empower continues to operate, hundreds of thousands of New Yorkers who depend on Empower's software, including over ten thousand Subscribers who rely on Empower's software to support themselves and their families and hundreds of thousands of New Yorkers who rely on Subscribers for access to safe and affordable transportation, will suffer if Empower ceases operating in New York City.

21.    Empower has been prejudiced by the City's delay in seeking relief.  Empower has made substantial investments in its business in New York City in the interim, growing it by 2,000% in just the twelve (12) months prior to this action being filed by the City.

22.    Empower has spent millions of dollars and devoted significant focus in New York City on marketing and scaling its business, making an injunction now far more destructive than it would have been in 2023.

23.    Thousands of Subscribers have built their own businesses around Empower, likely making financial commitments in reliance on the continued availability of the software, which would increase the harm to those Subscribers and the reputational harm to Empower if it were forced to shut down.

24.    Shutting down Empower in New York would also destroy the company's investment over the last four years, causing irreparable harm to Empower.

25.    Subscribers using Empower's software to work for themselves make substantially more money than they do working for Uber or Lyft. And riders in New York City are currently saving tens of millions of dollars per year using Empower's software to book rides from Subscribers.  None of the harms alleged by the City outweigh the very real hardships that would

befall Subscribers, who rely on Empower's software to support their families, and riders, who rely on it to book safe and affordable transportation. A preliminary injunction would immediately harm the public to the benefit of one of the largest corporate political donors.

26.     Exhibit 1 attached hereto is a true and correct copy of New York City Councilmember and Majority Leader Shaun Abreu's letter to Corporation Counsel dated March 19, 2026, that was posted on Mr. Abreu's website.

27.     Exhibit 2 attached hereto is a true and correct copy of a document downloaded from the New York City Campaign Finance Board's website.  It indicates that in 2025, Uber NY PAC made contributions to Shaun Abreu, totaling $259,417.87.

28.     I live and work in Virginia.  Being a defendant in a lawsuit in New York would be a substantial burden on me personally and professionally.

<u>Washington, D.C. Matters</u>

29.     In Washington, D.C., after the  D.C. Superior Court concluded that Empower was required to register there or stop operating, and even while that decision remained on appeal, Empower filed two registration applications in D.C. and paid the required, non-refundable fees in May 2025.

30.     On April 23, 2026, that same court determined that Empower is in compliance with D.C. law and its order, and the District did not appeal that decision.

**Defendants' Motion to Dismiss the City's Complaint**

31.     It is my understanding that the City was ordered by the state court to send the Order to Show Cause, supporting papers, Summons, and Verified Complaint via overnight express mail and regular first-class mail to "1307 Dolley Madison Boulevard, 4th Floor, McLean, Virginia 22101."

32.     Attached as Exhibit 3 is a true and correct copy of the UPS envelope that had contained those papers with a return address of the New York City Law Department that was addressed to:

> Yazam Inc. d/b/a Empower
> 1307 Dolley Madison Boulevard
> McLean, Virginia 22101-3936

33.     The full zip code for our office on the fourth floor of the building is 22101-3913. The zip code 22101-3936 is incorrect; it is not associated with our office or our floor.  It is my understanding from U.S. Postal Service records that it is the zip code for the building, not our office or floor. Attached as Exhibit 4 is a true and correct copy of a document downloaded from the U.S. Postal Service website that purports to list zip codes for suites and other addresses related to 1307 Dolley Madison Boulevard.

34.     Attached as Exhibit 5 is a true and correct copy of a document downloaded from the United Parcel Service (UPS) website that purports to be a UPS proof of delivery record for the tracking number that appears on the UPS envelope at Exhibit 3.  That tracking number is 1Z80A03X0195547891.

35.     The UPS package sent by the City was not delivered the next day to Empower's mail area for postal deliveries.  To the best of my knowledge after reasonable inquiry, it was left in a common area of the office building at what UPS's delivery confirmation says was the "front d[oor]."

36.     Attached as Exhibit 6 is a true and correct copy of a priority mail envelope that had contained service papers with a return address of the New York City Law Department that is addressed to:

Yazam Inc. d/b/a Empower
1307 Dolley Madison Blvd.
McLean, VA. 22101

37.     To the best of my knowledge, the priority mail package was not delivered to Empower until sometime during the following week of April 6.

38.     Exhibit 7 is a true and correct copy of the following page from Empower's website, which was downloaded on June 18, 2026: https://faq.driveempower.com/hc/en-us/articles/39082332739597-Are-drivers-who-use-Empower-s-software-in-New-York-required-to-be-licensed-by-the-NYC-Taxi-and-Limousine-Commission-TLC

39.     Exhibit 8 is a true and correct copy of the following page from Empower's website, which was downloaded on June 18, 2026: https://driveempower.com/

40.     Exhibit 9 is a true and correct copy of the following page from Empower's website, which was downloaded on June 18, 2026: https://faq.driveempower.com/hc/en-us/articles/23735366312845-How-do-I-get-paid-by-riders

I declare under penalty of perjury that the foregoing is true and correct.  Executed on June 18, 2026.

Joshua Sear
Joshua Sear

8