**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE CITY OF NEW YORK<br><br>                    Plaintiff,<br><br>     v.<br><br>YAZAM INC. D/B/A EMPOWER AND JOSHUA<br>SEAR<br><br>                    Defendants. | Civil Action No.  26-cv-3632 |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO DISMISS COMPLAINT**

Diana Sterk
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
diana.sterk@arnoldporter.com

Ryan Hartman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
ryan.hartman@arnoldporter.com

*Attorneys for Defendants Empower and Sear*

July 16, 2026

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    The Claims Against Empower Must be Dismissed for Failure to State a Claim ............... 1

    A.    The City Fails To Plead Facts Showing that Empower "Dispatches" or "Facilitates the Dispatch" of Drivers ................................................................................................. 2

    B.    The City's Claims Suffer Additional Defects Requiring Dismissal ......................... 4

    C.    The City Does Not Dispute Its Failure to Plead Elements Supporting Injunctive Relief and Other Statutory Claims ............................................................................ 6

II.    The Claims Against Mr. Sear Must Be Dismissed for Lack of Personal Jurisdiction ........ 7

    A.    The City Entirely Fails to Respond to Defendants' Dispositive Minimum Contacts Arguments Precluding Personal Jurisdiction ........................................................... 7

    B.    The City's Jurisdictional Theories Fail ..................................................................... 7

III.    The Claims Against Mr. Sear Must Be Dismissed for Failure to State a Claim ........... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................2

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
   667 F. Supp. 3d 83 (S.D.N.Y. 2023)...................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................2, 3

*Bonilla v. Smithfield Assocs. LLC*,
   2009 WL 445730 (S.D.N.Y. Dec. 4, 2009) ...................................................................6, 7, 8

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)...................................................................................................9

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
   387 F. Supp. 2d 265 (S.D.N.Y. 2005)...................................................................................8

*Fadem v. Ford Motor Co.*,
   352 F. Supp. 2d 501 (S.D.N.Y. 2005)...................................................................................8

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................................................7

*Jackson v. Fed. Express*,
   766 F.3d 189 (2d Cir. 2014)..............................................................................................6, 7

*Luckenbach S. S. Co. v. United States*,
   312 F.2d 545 (2d Cir. 1963).................................................................................................1

*Morris v. N.Y. State Dep't of Taxation & Fin.*,
   82 N.Y.2d 135 (1993) ..........................................................................................................9

*O Zon Inc. v. Charles*,
   272 F. Supp. 2d 307 (S.D.N.Y. 2003)................................................................................10

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (2d Cir. 1994)...................................................................................................8

*Thackurdeen v. Duke Univ.*,
   130 F. Supp. 3d 792 (S.D.N.Y. 2015).................................................................................9

**Statutes**

N.Y.C. Admin. Code § 19-502(gg)......................................................................................2, 3, 6

N.Y.C. Admin. Code § 19-506 .....................................................................................................6

N.Y.C. Admin. Code § 19-511 .................................................................................................2, 3

N.Y.C. Admin. Code § 19-528 ....................................................................................................2

N.Y.C. Admin. Code § 19-548 .................................................................................................2, 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(2).........................................................................................................7, 8

Fed. R. Civ. P. 12(b)(6)..............................................................................................................8

35 R.C.N.Y. § 51-03 ...........................................................................................................1, 2, 3

35 R.C.N.Y. § 59B-03(g)(1)-(4) ................................................................................................3

**INTRODUCTION**

The City's Opposition confirms that the Complaint lacks a viable legal theory. Each claim against Empower hinges on showing that the company is dispatching, or facilitating dispatching of, drivers. But the City fails to even attempt to make that factual showing.

Dispatch is a defined term: It requires a "request made from a Base Station to a Driver, *directing* the Driver to provide transportation…." 35 R.C.N.Y. § 51-03 (emphasis added). The City ignores this critical definition. It does not allege that Empower "directs" any driver to do anything and it does not respond to Defendants' arguments establishing that none of the City's four claims can proceed without doing so. The City also fails to allege facts specific to each of the individual claims. Accordingly, the Complaint fails as a matter of law.

The City's arguments about Mr. Sear fare no better. The Complaint does not allege that he personally transacted business in New York, instead relying on the universally rejected theory that suing a company renders its officers subject to personal liability and jurisdiction, without requiring specific allegations about them. The City simply recites the corporate veil-piercing standard, without presenting factual allegations of the complete domination required to meet this exacting test. Plaintiff also ignores dispositive arguments, including that haling a Virginia resident into New York based on his corporate title and his appearing via Zoom from Virginia to make a two-minute statement at a City Council hearing would violate due process. And the City abandons its substantive claims against Mr. Sear by offering no defense in its Opposition. The motion to dismiss should be granted.

**ARGUMENT**

## I.    The Claims Against Empower Must be Dismissed for Failure to State a Claim

Each of the City's four claims depends in some way on Empower dispatching or facilitating the "dispatching" of drivers. Yet the City fails to support its conclusory assertion that Empower is

doing either. Nor can the City's request for declaratory relief substitute for pleading an underlying "substantive claim[]." *Luckenbach S. S. Co. v. United States*, 312 F.2d 545, 548 (2d Cir. 1963).

### A.    The City Fails To Plead Facts Showing that Empower "Dispatches" or "Facilitates the Dispatch" of Drivers

Central to the City's Complaint is its assertion that Empower "dispatch[es]" or "facilitate[s] the dispatch" of drivers. *See* Compl. ¶¶ 10, 13-16, 19, 37, 41. For example, Count One alleges a violation of §§ 19-511 and 19-528(a) for the unlicensed "operation of two-way radio or other communications systems used for *dispatching* or conveying information to drivers." Compl. ¶ 36 (emphasis added). The City pleads this violation specifically with respect to dispatching, explaining that "[n]either Empower nor Sear have applied for, or obtained, a license for the operation of its communications system *dispatching* for-hire vehicles." *Id.* ¶ 37 (emphasis added).[1] The same is true for the other three Counts, each of which rests on alleged *dispatching* activity.[2]

Yet despite the centrality of the term "dispatch" to its Complaint, the City's Opposition never once cites (much less engages with) the term's definition. Section 51-03 defines "dispatch" as "a request made from a Base Station to a Driver, *directing* the Driver to provide transportation to a passenger who has previously arranged for such transportation." 35 R.C.N.Y. § 51-03 (emphasis added). As in the Complaint, the City simply asserts that "Empower *is* dispatching or

---

[1] It is undisputed that "conveying information to drivers" does not salvage Count One. Mem. 19.

[2] Count Two alleges a violation of §§ 19-511 and 19-528(a) for activity that requires a "base license," which the City pleads with respect to dispatching: "Neither Empower nor Sear have applied for, or obtained, a license for the operation of its base *dispatching for-hire vehicles*." Compl. ¶ 41. Count Three alleges a violation of §§ 19-548(c) and 19-548(a) for operating an unlicensed High-Volume For-Hire Service, which requires that the entity "*dispatches, or facilitates the dispatching* of, 10,000 or more trips in the city in one day." Admin. Code § 19-502(gg) (emphasis added); Compl. ¶ 45. And Count Four alleges that Empower is engaging in activity for which a license is required in violation of § 19-528(a)—a theory that rises or falls with the other counts. Mem. 22.

facilitating the dispatching of drivers." Opp. 14 (emphasis in original). Yet the City never attempts to identify any *factual allegations* that Empower directs drivers to do anything.

This failure is dispositive. Merely asserting "legal conclusions" that a statute's standard has been met is the *quintessential* pleading defect. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007); *see* Mem. 2, 8. By measuring the Complaint against the relevant statutory standards, Defendants are not "making up requirements" or going "outside the four corners of the pleading," as the City suggests. Opp. 14-15. Controlling law requires the City to provide "allegations plausibly suggesting (not merely consistent with)" the relevant statutory standard being met. *Twombly*, 550 U.S. at 557. Defendants' observation that the Complaint does not allege that Empower "directs or requires drivers to provide transportation" (Mem. 3) does not add a new statutory element; it shows why the Complaint fails to plausibly allege the element the rule contains: "directing [a] Driver to provide transportation to a passenger." 35 R.C.N.Y. § 51-03.

The City misdirects, asserting that "*connecting* passengers with an Empower driver … subjects Empower to licensure." Opp. 3-4 (emphasis added). This is simply false. The statutes that the City invokes do not require a license for merely "connecting." The word "connects" appears in the definition of High Volume For-Hire Service ("HVFHS") as *one element* of that definition, but the statute *also* requires that the entity "*dispatches,* or *facilitates the dispatching* of, 10,000 or more trips in the city in one day." Admin. Code § 19-502(gg) (emphasis added). And it does for good reason: The City's HVFHS regulations were enacted to specifically regulate Uber and Lyft—high-volume transportation providers that direct and pay drivers to provide rides to the companies' riders on behalf of the companies—not companies that merely *connect* transportation providers to

3

their own customers.[3] Again, the City has not pled facts that Empower directed drivers to provide transportation to riders, because Empower does not do so.

If anything, the Complaint actually introduces facts that help establish that Empower *does not direct* drivers to provide transportation services. Specifically, the Complaint cites Mr. Sear's testimony that "Empower provides drivers with software and support services that enable them to truly run their own businesses . . . set their own rates and get 100% of their hard-earned fares." Compl. ¶ 14. The Complaint further acknowledges that drivers "pay a subscription fee to Empower." *Id.* ¶ 8; *see* Opp. 5.

Finally, the City argues, without support, that *Empower's* argument is circular, boiling down to the notion that "the law cannot apply to [Empower] because [Empower] ha[s] chosen not to follow the law." Opp. 3. Not so.[4] Again, Empower's argument is that the Complaint does not plausibly establish, as it must, that Empower dispatches drivers.

### B.    The City's Claims Suffer Additional Defects Requiring Dismissal

**Count One:** Section 19-511(a) does not *itself* create a license requirement for communications systems, but rather directs TLC to do so, which it has not done. Mem. 17-18. The City does not dispute this and offers no explanation or support, other than a citation to § 19-511(a), for its assertion that "Empower would still be required, based 'upon such terms as [TLC] deems

---

[3] The fact that Empower enables riders seeking ground transportation to book a ride from a driver, who pays Empower for access to Empower's booking software, does not mean that Empower is *directing* drivers to provide ground transportation, just like the fact that Expedia enables individuals seeking air transportation to book a flight from an airline that pays Expedia for access to its booking software, does not mean that Expedia is *directing* airlines to provide air transportation.

[4] Empower's argument does not depend on the fact that it "does not have any physical base location," Opp. 14, or that it does not "own vehicles" or "employ drivers." Opp. 3 (cleaned up). The City's ownership/employment point also comes from Defendants' earlier letter-motion— overinclusive given the imprecision of the Complaint—not Defendants' motion to dismiss.

advisable,' to seek approval by TLC to operate a communication system." Opp. 15. The City also does not dispute that § 19-511(a) is limited to communications systems used for dispatching and conveying information to drivers of "licensed vehicles" and that it has not pled that Subscribers' vehicles are TLC-licensed, which is a predicate for Empower to be subject to § 19-511(a). *See* Opp. 16.[5]

**Count Two:** The City must plead facts showing Empower fits at least one of the four specific base categories: (1) black car base, (2) livery base/base station, (3) luxury limousine base, or (4) HVFHS. 35 R.C.N.Y. § 59B-03(g)(1)-(4). The City fails to identify *any* factual allegations that Empower falls within any of the first three categories.[6] This alone is sufficient to dismiss Count Two. Additionally, Empower does not own vehicles through franchisees or a cooperative (black car), does not dispatch rides (all four), and does not operate garage-to-garage service (luxury limousine). Mem. 21-22. Instead, the City rests entirely on its claim that Empower is a HVFHS.

**Count Three:** The statutory definition of HVFHS requires that an entity "dispatches, or facilitates the dispatching of, 10,000 or more trips in the city in one day." Admin. Code § 19-502(gg). As set forth above, the City pleads no facts that Empower dispatches trips. The City pleads only that Empower's software "connects" riders and drivers. Count Three therefore fails.

**Count Four:** The City fails to address Defendants' arguments regarding Count Four entirely. It does not dispute that Count Four fails to identify any independent license created by § 19-528(a) and is therefore duplicative of the other Counts. It also does not dispute that Count Four fails to give Defendants fair notice of the claim. The City's failure to respond to these dispositive arguments constitutes an abandonment of this claim. *See, e.g., Jackson v. Fed. Express*, 766 F.3d

---

[5] Although every driver using Empower's software in the New York region is a TLC-licensed driver using a TLC-licensed vehicle, the City's tactical decision not to plead this fact has consequences on a motion to dismiss.  *See* Mem. 1.

[6] Empower addresses the City's HVFHS allegations in Count Three below.

189, 198 (2d Cir. 2014); *Bonilla v. Smithfield Assocs. LLC*, 2009 WL 445730, at *4 (S.D.N.Y. Dec. 4, 2009).

### C. The City Does Not Dispute Its Failure to Plead Elements Supporting Injunctive Relief and Other Statutory Claims

The City does not dispute that it failed to plead the elements for injunctive relief (Mem. 23) or that even a single rider, driver, or member of the public has been harmed by Defendants. It simply declares in its Opposition that "the public, drivers, and riders are put at risk," but does not plead any facts to support this conclusory claim. Opp. 1. The Opposition conjures a parade of harms—"predatory fees," unfit drivers, unsafe vehicles, inadequate insurance, minimum pay violations, untracked ride data, and unpaid taxes. Opp. 2. But none of these assertions appear *in the Complaint*, and thus cannot support any of their claims for relief. And each of these supposed harms is irreconcilable with other facts that actually are before the Court. The City's enforcement campaign produced a total of 32 summonses (each carrying a $100 administrative penalty) over two years, Mem. 6; Compl. ¶ 11, followed by a three-year gap before any further action. That is hardly the urgent public-safety crisis the Opposition now portrays. Empower's model, moreover, provides *total* fare transparency: Drivers set their own rates and receive 100% of what they earn, Mem. 5-6; every driver using Empower in New York must be a TLC-licensed driver operating a TLC-licensed vehicle with TLC-required insurance, *id*. at 1-2, 5; and drivers using Empower to work for themselves earn thousands of dollars more per month than they do working for Uber or Lyft—hardly a minimum-pay problem, *id*. at 6.

Separately, the City undisputedly fails to plead facts showing a § 19-506 claim, despite its request for injunctive relief under this section. Mem. 24.

6

**II.    The Claims Against Mr. Sear Must Be Dismissed for Lack of Personal Jurisdiction**

Mr. Sear, Empower's CEO, is not a proper party because the City has not established personal jurisdiction over him. The City's Opposition devotes barely two pages to Mr. Sear and is silent on Defendants' central personal jurisdiction arguments.

**A.    The City Entirely Fails to Respond to Defendants' Dispositive Minimum Contacts Arguments Precluding Personal Jurisdiction**

The City fails to address Defendants' constitutional argument that haling a Virginia resident into New York based solely on corporate title and one remote legislative appearance would violate due process by failing to provide minimum contacts and offending "traditional notions of fair play and substantial justice." Mem. 12 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The City fails to respond to Defendants' argument that the Complaint identifies no specific business-related act by Mr. Sear in New York—no contract signed, no driver directed, no requirement to personally register. Mem. 12. That failure alone requires dismissal under Rule 12(b)(2).

It is the City's burden to establish personal jurisdiction. *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 116 (S.D.N.Y. 2023). Courts routinely recognize that a plaintiff's failure to oppose a dispositive argument in a motion abandons that legal theory. *See, e.g.*, *Jackson*, 766 F.3d at 198; *Bonilla*, 2009 WL 445730, at *4. The City's utter failure to defend personal jurisdiction under controlling due process standards requires dismissal of Mr. Sear.

**B.    The City's Jurisdictional Theories Fail**

Rather than respond to Defendants' dispositive arguments, the City repeats the Complaint's formulaic recitation that Mr. Sear "directed, controlled, had authority to control, or participated in Empower's business operations in the City." Opp. 4. This recitation does not suffice. Section

7

302(a)(1) requires that a non-domiciliary personally "transact[] any business within the state" and that the cause of action "aris[e] from" that transaction. Defendants' motion to dismiss cited multiple authorities holding that conclusory allegations of corporate control are insufficient to establish personal jurisdiction over an individual officer. Mem. 12-14. The City does not distinguish or even acknowledge any of these cases. Instead, the City cites the truism that a plaintiff may establish jurisdiction through a "prima facie showing" based on "pleadings" and "allegations." Opp. 16. But that standard still requires non-conclusory, *fact-specific* allegations— not legal conclusions couched as facts. *Bayshore*, 667 F. Supp. 3d at 116. And unlike on a 12(b)(6) motion, the Court cannot draw inferences in the plaintiff's favor on a 12(b)(2) motion, confirming that legal conclusions alone cannot suffice. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

The City also makes a conclusory assertion that Mr. Sear is subject to personal jurisdiction because he is Empower's "alter ego"—*i.e.*, that Empower's "corporate veil" should be pierced. Opp. 16. But the City asserted no veil-piercing theory in the complaint—and "parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005), *aff'd,* 157 F. App'x 398 (2d Cir. 2005). Regardless, the City identifies no facts that could support veil-piercing. The City's own authority (Opp. 16-17) makes clear that veil-piercing requires not just ordinary managerial control, but "*complete domination*" used specifically to "commit *a fraud or wrong* against the plaintiff." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 273 (S.D.N.Y. 2005) (emphasis added). The Complaint merely provides that Mr. Sear is "the founder and Chief Executive Officer and Director" who "has directed, controlled, had the authority to control, or participated in Empower's business operations." Compl. ¶ 4. That is typically true of any CEO, and potentially any corporate officer, at any company. These garden-variety allegations of corporate title and direction are

8

insufficient to pierce the veil. *See Morris v. New York State Dep't of Tax'n & Fin.*, 82 N.Y.2d 135, 142 (1993) (no veil-piercing despite individual being company's "president and its only director"); Mem. 13 (citing additional cases). Otherwise, corporate officers could be found personally liable for every case involving their company.

Finally, the City falls back on Mr. Sear's remote testimony given from Virginia before the City Council, in support of TLC Chair nominee Valdivia on March 12, 2026, claiming that this testimony "gave rise to" Count Three and establishes jurisdiction. Opp. 4. But testimony (much less remotely over Zoom in support of a nominee) is not "transacting *business*"—a point Defendants raised in their motion (Mem. 13) to which the City offers no response. Even if the testimony qualified as a business transaction, the City's claims do not "arise from" that transaction. Mem. 13. The City's four claims allege unlicensed operation of a FHV service—conduct the City itself asserts began in 2022, years before the testimony. And the City's notion (which was not alleged in the Complaint) that the testimony *alerted* the City to the scale of operations does not mean the licensing claims "arise from" it.[7] Pointing to some New York conduct that is "'a link in the chain of causation leading to plaintiff's claims' is not itself sufficient for purposes of section 302(a)(1)." *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 802 (S.D.N.Y. 2015), *aff'd,* 660 F. App'x 43 (2d Cir. 2016); *see, e.g.*, *Gelfand v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 321–22 (2d Cir. 1964) (bus accident did not "arise from" purchase of bus ticket in New York, despite causal link). Rather, New York law requires "'a substantial nexus' between the transaction of business

---

[7] The City's claim that "it was [Mr. Sear's] testimony that caused Plaintiff to first learn of the scale of Empower's operations, escalate its enforcement efforts, and ultimately bring this instant litigation," Opp. 13, eviscerates the notion that Empower's operations are causing the "immediate, irreparable, and substantial harm" necessary to support an injunction. The City concedes that the harm from Empower's operations was so insubstantial that the City was not aware of it and would not have sought an injunction to stop it, but for Mr. Sear's testimony. Regardless, this claim appears nowhere in the Complaint and thus cannot establish jurisdiction.

and the claim." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006). The City does not even attempt to meet that test. And it repeats its mischaracterization of Mr. Sear's testimony. The actual testimony was that "Empower provides drivers with software and support services," that drivers "set their own rates," and get "100%" of fares. Compl. ¶ 14. The word "dispatching" is the City's, not Mr. Sear's. Opp. 4.[8]

### III.    The Claims Against Mr. Sear Must Be Dismissed for Failure to State a Claim

Even if Mr. Sear were subject to personal jurisdiction in New York, the City abandons defense of any of its claims against Mr. Sear individually. Across several pages of their motion, Defendants described why these claims failed. *See* Mem. 14-16. Defendants explained that the Complaint lacks any allegation that Mr. Sear personally performed any relevant tortious or statutory act—contracted with any driver, operated any communications system, dispatched any ride, or was required to apply for any TLC license. Mem. 14-16. The City does not dispute this or explain how Mr. Sear can nonetheless be a party under those circumstances. And Defendants explained that there is no basis for an injunction against Mr. Sear, as a complaint must allege wrongful conduct by each defendant that would entitle the plaintiff to an injunction against that defendant. *Id.* (citing *O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003)). The City identifies no such conduct, and the claims against Mr. Sear fail.[9]

---

[8] The City cites D.C. proceedings in which Mr. "Sear was nearly sanctioned" as somehow proving that Mr. Sear must be "h[eld] … to account." Opp. 17 & n.5. These proceedings have nothing to do with personal jurisdiction in New York. And the notion that Mr. Sear is "necessary" cannot establish jurisdiction; every plaintiff views out-of-jurisdiction defendants as necessary to the case. The City's attempt to smear Mr. Sear with irrelevant allegations belies the weakness of its case. In reality, he founded a company that helps tens of thousands of hard-working drivers support themselves and their families by helping them run their own businesses in which they provide access to safe and affordable transportation to millions of people.

[9] The Court need not address service issues at this time. Though the City admitted in a footnote that it had *not* effected service of the Complaint on Defendants (Opp. 12 n.4), since then, consistent with Defendants' pre-motion offers to do so, Mr. Sear has accepted service; Empower anticipates doing so shortly. If any service issues remain, Defendants will timely raise them.

Dated: July 16, 2026

/s/ Ryan Hartman

Diana Sterk
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
diana.sterk@arnoldporter.com

Ryan Hartman (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
ryan.hartman@arnoldporter.com

*Attorney for Defendants Empower and Sear*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.1(c), I hereby certify as follows: (i) according to Microsoft Word, the portions of this memorandum that must be included in a word count contain 3,466 words; and (ii) this memorandum complies with the word and page count limit set forth in Local Rule 7.1(c) and Section 2(B)(i) of the Court's Individual Practices.

/s/ Ryan Hartman

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2026, I filed this through the ECF system, which served a copy on counsel for all parties.

/s/ Ryan Hartman

11